STATE of Missouri, Respondent,

v.

William ROWE, Appellant.

William ROWE, Appellant,

v.

STATE of Missouri, Respondent.

No. 56957.

Missouri Court of Appeals, Eastern District, Division Two.

March 26, 1991.

Kathleen Green, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Barbara J. Wood, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, William Rowe, appeals his jury conviction for the crimes of assault, first degree, RSMo § 565.050.1 (1986), and armed criminal action, RSMo § 571.015.1 (1986), for which he was sentenced to two concurrent eight year terms. Appellant also appeals the motion court's denial of his Rule 29.15 motion without an evidentiary hearing. We affirm.

The evidence reveals that, on the night of July 24, 1987, Glenda Nelson telephoned appellant to arrange the purchase of some drugs for herself and her brother, Chris

Nelson.[1] Because Chris was no longer permitted inside the family home at 4208 Ravenwood in Pine Lawn, Glenda arranged for appellant to meet her and Chris behind the family home.

When the appellant arrived, he spoke with Chris at the side of the house. Glenda waited at the front of the house for the transaction to be completed. Chris, apparently, had abandoned appellant at the side of the house without having consummated the drug deal and within a few minutes, the appellant approached Glenda demanding that she tell him where Chris had gone. When she responded that she did not know, appellant screamed obscenities at her.[2]

Upon hearing the argument between appellant and Glenda, Glenda's other brother, Corey Nelson, came to the front of the house. Corey and the appellant argued and Corey testified at trial that he observed that appellant was carrying a gun. Edna Nelson, the mother of Corey, Glenda and Chris, soon came to the front door and told Corey and Glenda to get inside. They complied. A few minutes later, appellant fired approximately six gunshots into the family home.

Appellant was charged with assault in the first degree and armed criminal action in connection with the assault or, in the alternative, with shooting into a dwelling and armed criminal action in connection with the shooting. A jury trial was held on May 23–25, 1989, and, on May 25, 1989, the jury returned its verdict.

Appellant filed a timely *pro se* motion pursuant to Rule 29.15 on October 25, 1989. A timely, yet unverified,[3] amended motion was filed on January 8, 1990. The court denied the *pro se* motion without an evidentiary hearing on April 10, 1990. This appeal followed.

Appellant first contends that the trial court erred in allowing the prosecution to elicit evidence that appellant sold drugs, used drugs and used an unregistered gun at the time of the assault. Appellant claims that this evidence was inadmissible evidence of other crimes. We disagree.

■ We first note that appellant's trial attorney failed to object to any of the testimony now complained of. As such, the issues presented were not preserved for purposes of appeal. *State v. Ball*, 622 S.W.2d 285, 291 (Mo.App., E.D.1981). We will review the points, however, for plain error. Rule 30.20. Under this standard, the plain error complained of must impact so substantially upon the rights of the defendant that manifest injustice or a miscarriage of justice will result if left uncorrected. *State v. Driscoll*, 711 S.W.2d 512, 515 (Mo. banc) cert. denied 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986).

■ It is settled law in Missouri that evidence of other crimes committed by a defendant is inadmissible unless the evidence is logically relevant to establish the defendant's guilt of the crime charged. *State v. Kenley*, 693 S.W.2d 79, 81 (Mo. banc 1985). Several exceptions exist to this rule, however. These exceptions include evidence tending to establish: 1) the identity of the defendant; 2) motive; 3) intent; 4) absence of mistake or accident; 5) a common scheme or plan embracing two or more crimes so closely related that evidence of the one tends to prove the other; and 6) a continuous occurrence that involves two crimes, so closely linked in point of time and circumstances with the crime charged, that one cannot be fully shown without proving the other. *State v. Weatherspoon*, 728 S.W.2d 267, 272–73 (Mo.App., W.D.1987).

Appellant's points of error are focused on three portions of testimony: 1) that appellant sold drugs, 2) that appellant used drugs, and 3) that the gun was unregistered.

---

1. After their initial introduction, the parties will be referred to by their first names. No disrespect is meant by this manner of reference.

2. The evidence does not reveal what happened to Chris.

3. The evidence reveals that appellant was provided several opportunities to sign the amended motion but continuously refused to do so.

**The evidence that Glenda Nelson phoned appellant for the purpose of a drug deal is certainly relevant in this case to demonstrate motive. "Wide latitude is generally allowed in the development of evidence of motive." *State v. Smith*, 772 S.W.2d 760, 764 (Mo.App., W.D.1989). Without evidence of the drug deal, the State would have been asking the jury to believe that defendant argued with the Nelsons and fired six shots into their home for no apparent reason. A failed drug deal provided the all important "why" in this case.

**The evidence that the appellant used drugs presents a more difficult question. During the trial, evidence was presented that appellant was involved in a shooting on Lawler in the Northmoor community in St. Louis County. This shooting occurred two weeks after the shooting at the Nelson home.[4] Appellant was taken into custody for questioning by then Detective Peter McDermott.[5] Detective McDermott was permitted to testify without objection that the appellant confessed to the Lawler shooting and that he admitted to consuming Phencyclidine (PCP) and cocaine before the shooting at Lawler. Appellant now claims that the evidence of his drug use was inadmissible evidence of other crimes.

It appears, however, that the failure to object by appellant's attorney was a matter of trial strategy, and not inadvertent. Indeed, appellant's attorney went into some detail with Detective McDermott on cross examination—far beyond the detail gone into by the State:

Q  Sergeant McDermott, when you interviewed William Rowe on the 12th of August, he was fairly high on drugs, was he not?

A  He admitted to having consumed alcohol and drugs earlier on in the evening.

Q  Wasn't there some mention made by him of PCP, that you can recollect?

A  In one of the interviews, he did mention PCP. He did challenge us in the first one to find out what drugs he had taken.

Q  What is PCP, sir?

A  The initials stand for Phencyclidine.

Q  And what kind of a drug is that?

A  I guess you could call it a hallucinogenic drug.

Q  It was an animal tranquilizer at one time?

A  It was used for that, yes.

Q  The information that you had received from Mr. Hanes previously which you have testified to, you had also received information that my client was naked at the time he ran away?

A  That's correct.

Q  That he had stripped off his clothes in the street and went off and left his clothes behind him?

A  Yes, sir. Yes, ma'am, excuse me.

Q  He was subsequently conveyed to Malcolm Bliss Mental Health Center, was he not?

A  No.

Q  There was not an involuntary commitment made overnight?

A  It was to the State Hospital on Arsenal Street.

Q  St. Louis State Hospital on Arsenal Street?

A  Yes.

Q  And there were people in the Northwoods Police Department who took him there?

A  Yes.

Q  And that was against his will?

A  Yes.

Q  Why was that done?

A  It was done at my direction because he had admitted to a violent episode under the influence of drugs, alcohol or whatever. And because he had later—or made threats against the President's life.

4. The evidence concerning the shooting itself has not been challenged on appeal.

5. Detective McDermott has been elevated to Sergeant since that time.

Q He did actually threaten the President of the United States that night, did he not?

A That morning. We're talking about morning now.

Q Was your recommendation made in part because of his behavior that had been described to you as being bizarre?

A The recommendation was made, I directed him to be taken to the hospital because the law has that remedy, that we can commit someone against their will if their actions under the influence of drugs constitute a threat to the community.

Appellant clearly wanted the evidence of his being "fairly high on drugs" at the time of his confession to be before the jury. In this way, the jury could consider the appellant's drug-induced state and odd behavior when it determined the amount of weight his confession was due. This is also indicated by appellant's closing argument to the jury:

[Sergeant McDermott] didn't want to tell you that my client at the time he made that statement about the Lawler street address was out of his gourd on drugs. He didn't want to tell you that. Now, does that make my client a good person because he was out of his head on drugs, no.

There's an instruction here that talks about statements made by someone. That's your final decision as to how much weight you are going to give to that statement that he made to the police about shooting into that house on Lawler.

Police Officer McDermott had to hedge his bets, too. He couldn't say that he was out of his gourd, even though there's conversation in there that he was on PCP, cocaine, that he had information that this man had been running down the street nude after this incident happened. The man had threatened to kill the President of the United States. And that he himself, McDermott, ordered this man William Rowe into St. Louis State Hospital as an involuntary commitment. Now, he says he was fit for confinement be-

cause they took him to Regional Hospital.

What does all this have to do with the evidence in this case? It has to do with that statement that was made by my client to Police Officer McDermott, and admitting shooting into that house on Lawler. Police Officer McDermott didn't want you to know that he was out of his mind with drugs, but he told you that he insisted that he go to St. Louis State Hospital.

Now, ladies and gentlemen, that is not a standard arrest procedure. People who are arrested for offenses are not taken to St. Louis State Hospital, which is a mental hospital. They are usually taken immediately to jail. And he told you he was kept there for four days. That can go into your giving weight to that statement made by William Rowe to the police officer.

There's an instruction in here on that, if I might have the Court's instructions, Judge.

THE COURT: Sure, there they are (indicating).

MS. HIRZY: The instruction that I'm talking about here is Instruction No. 14 "Evidence has been introduced that the defendant made certain statements related to the offense for which he is on trial. If you find that a statement was made by him, and that the statement was freely and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you may give it such weight as you believe it deserves."

It doesn't say you have to give it weight, it says you give it as much weight as you think it deserves.

But there's another paragraph there. "However, if you do not find and believe that the defendant made the statement, or if you do not find and believe that the statement was freely and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you are instructed you must disregard it and give it no weight in your deliberations."

And that is his statement, he made that statement. His being high on

drugs, running nude, going to St. Louis State Hospital is important for purposes of that statement that he made to Police Officer McDermott.

THE COURT: Ms. Hirzy, you have ten minutes.

MS. HIRZY: Thank you.

The law tells you that. You decide how much weight to be given to it if you feel that the statement was made voluntarily and under all the circumstances. All right? But if you find that it wasn't because he was out of his mind on drugs, and because the police officer under his own words ordered him to St. Louis State Hospital for four days for an involuntary confinement, then if you find that that's the case, then you may look at the statement and say, well was it made voluntarily under all the circumstances? And if you find that to be the case, ladies and gentlemen of the jury, you are instructed not to give it any weight at all.

It is clear that appellant wanted to use the evidence of his drug use to undermine the credibility of his confession. Where a defendant fails to object and actively joins in the presentation of evidence to the jury, he may not argue later that the admission of the evidence was error. *State v. Cooksey,* 499 S.W.2d 485, 488 (Mo.1973); *City of Independence v. Elder,* 653 S.W.2d 393, 397 (Mo.App., W.D.1983).

■ Appellant also claims that the trial court erred in permitting testimony that the handgun used by appellant was unregistered because this is evidence of uncharged crimes. This evidence was introduced to inform the jury why the gun could not be used by the State to identify appellant with the gun. We need not decide which, if any, exception to the general rule excluding evidence of uncharged crimes applies here in that no more than fleeting reference was made to the fact that the gun was unregistered and we do not find that such reference could have risen to plain error. Point denied.

■ Appellant next claims that the trial court erred in denying his motion to suppress his confession to the Lawler shooting in that it was involuntary under the Four-

teenth Amendment to the Constitution because he was high on drugs when he made it.

Appellant has failed to incorporate into the record on appeal the testimony adduced in support of his motion to suppress. It is reasonably clear, however, from comments made by counsel at trial that a hearing was had on the motion to suppress. Without the record of this hearing, we cannot determine what evidence was before the trial court on the motion to suppress and the point is not properly preserved for appeal. *State v. Cleveland,* 627 S.W.2d 600, 601 (Mo.1982).

■ We do note, however, that intoxication at the time of the confession does not render a confession involuntary unless the intoxication rises to a mania. *State v. Brown,* 698 S.W.2d 9, 11 (Mo.App., E.D. 1985). Even then, under *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), it is doubtful that the confession is "involuntary" under the Fourteenth Amendment to the United States Constitution.

In *Connelly,* the defendant confessed to murder while he was suffering from chronic schizophrenia. The lower courts suppressed the confession finding that it was not the product of a free will. The United States Supreme Court reversed. The Court noted that exclusionary rules are aimed at deterring government coercion and that suppressing statements made without such coercion would "serve absolutely no purpose in enforcing constitutional guarantees." *Connelly,* 479 U.S. at 167, 107 S.Ct. at 521–22. The Court then held that coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the due process clause of the Fourteenth Amendment. *Id.* at 168, 107 S.Ct. at 522.

We have reviewed the evidence presented at trial and find absolutely no evidence of coercion. In addition, we find that there was sufficient evidence presented at trial to indicate that the defendant acted knowingly and voluntarily when he made the confession and that his intoxication at the time of his confession did not rise to a mania. Point denied.

Appellant's final point is that the motion court erred in denying his Rule 29.15 motion without an evidentiary hearing. We disagree.

Appellant's claim is that the motion court erred in finding that his trial counsel was not ineffective in deciding not to object to the testimony regarding his sale and possession of drugs. Appellant admits that this allegation is not contained in appellant's *pro se* motion, however, appellant claims that it falls within the language in the *pro se* motion that his attorney "failed to exercise the skill and diligence that a reasonably competent attorney would perform under similar circumstances." In order to be entitled to an evidentiary hearing, the movant must allege facts which, if proven, would entitle him to relief. *Edwards v. State*, 772 S.W.2d 703, 704 (Mo.App., E.D.1989). The above quoted passage of appellant's *pro se* motion alleges nothing but conclusions and the motion court did not err in failing to consider every possible claim a movant might make under such boiler plate language. Point denied.

Affirmed.

CRANDALL, C.J., and CRIST, J., concur.