**STATE of Missouri, Respondent,**

v.

**Jack G. MARTIN, Appellant.**

**Nos. WD 43384, WD 45329.**

Missouri Court of Appeals,
Western District.

Aug. 25, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 29, 1992.

Application for Transfer Sustained
Nov. 24, 1992.

Case Retransferred March 23, 1993.

Court of Appeals Opinion Readopted
May 19, 1993.

J. Gregory Mermelstein, Office of the State Public Defender, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH, P.J., and SHANGLER and FENNER, JJ.

ULRICH, Presiding Judge.

Jack G. Martin appeals his convictions and consecutive sentences of five and ten years imprisonment for sodomy, § 566.060, RSMo 1986, and the final judgment, following an evidentiary hearing, denying his Rule 29.15 postconviction motion to vacate the two sodomy convictions and sentences. Mr. Martin raises seven points in his consolidated appeal. He claims that (1) because the victim's trial testimony was not corroborated, the trial evidence was insufficient to prove his guilt beyond a reasonable doubt; (2) the court's failure to grant his motion for judgment of acquittal at the close of all the evidence as to count III permitted the jury to reach a "compromise verdict" on the two counts for which he was convicted; (3) the court erred in permitting two detectives to testify as to what the child victim told them prior to trial; (4) the court erred in allowing the state to present evidence that he made the victim engage in sexual activity with her younger brother; (5) the trial court erred in failing to declare a mistrial, sua sponte, following a statement made by the prosecutor in closing argument; (6) the trial court abused its discretion in imposing consecutive sentences and in denying him probation because he exercised his right to trial; and the motion court erred in denying his Rule 29.15 postconviction motion on the ground that defense counsel (7) failed to file a bill of particulars prior to trial, and (8) failed to object to evidence that he made the victim engage in sexual activity with her younger brother.

The judgment of conviction is affirmed. The judgment denying appellant's Rule 29.15 motion is affirmed.

Jack Martin was charged by indictment with three counts of sodomy alleging violations of § 566.060, RSMo 1986. Counts I and II were identically written, both charging that "on or about June 1, 1989–June 14, 1989 ... defendant had deviate sexual intercourse with A.M., to whom the defendant was not married and who was less than fourteen years of age." Count III charged that Mr. Martin had "deviate sexual intercourse with M.M. (A.M.'s older sister), to whom the defendant was not married and who was less than fourteen years of age." Mr. Martin was acquitted of the offense charged as count III.

The facts at trial established that in June 1987, A.M. was ten years old. A.M. lived with her mother, an older sister, and her stepfather, Jack G. Martin. A.M.'s natural parents were divorced and another sister, M.M., and a younger brother, X.M., lived with their natural father. Together the four children visited their natural parents on alternate weekends.

In August 1987, two months after Mr. and Mrs. Martin were married, Mr. Martin called A.M. into his bedroom and asked her to rub his legs. Mr. Martin frequently complained of pain in his legs and asked family members to rub his legs. On this occasion, A.M. rubbed Mr. Martin's legs, and Mr. Martin "took [her] wrist and put [her] hand on his penis." A.M. attempted to pull her hand away, but the appellant

said, "It's okay," and she testified that her hand remained on Mr. Martin's genitals for "about five minutes."

Approximately one week later, A.M. was again rubbing Mr. Martin's legs in her bedroom. As she was rubbing his legs, Mr. Martin "started moving [her] hand up like he did the first time." He rested her hand "on his penis" for "about a couple of minutes."

A.M. testified that in early June of 1989 she accompanied her stepfather to a tree house located behind the family home. Mr. Martin asked A.M. to "give him a rubdown." A.M. began rubbing Mr. Martin's leg, and he grabbed her wrist and moved her hand to his penis. A.M. testified that Mr. Martin and she engaged in sexual activity in the tree house on approximately ten occasions.

A.M. testified that again in June of 1989, Mr. Martin asked her to give him a "rubdown." On this occasion, he was tucking her into bed. She began to rub his penis. A.M. testified that Mr. Martin said, "Let's try something different, and he moved [her] head down and put his penis in [her] mouth."

A.M. testified that on another occasion, while she was rubbing Mr. Martin's penis, he stated that "Maybe X.M. [A.M.'s younger brother] might enjoy something like this, too." A.M. testified that she resisted Mr. Martin's suggestion, but later "did what he told [her] to do" because she feared him. A.M. testified that Mr. Martin said her mother would send A.M. to a home and divorce him if Mrs. Martin learned what he and A.M. were doing. A.M. also testified Mr. Martin threatened that if that occurred, "he had a gun and he'd use it if he had to."

A.M. testified that Mr. Martin engaged in weekly sexual activity with her for over two years. She testified that such experiences occurred in the family car and in the family hot tub in addition to the other more specific incidents about which she testified.

A.M. stated that sexual activity between Mr. Martin and her stopped in June of 1989 when she was caught stealing goggles from a Wal–Mart store. Confronted with the theft, she informed her natural father of her sexual activity with Mr. Martin, and her father took her to a police station where, on June 16, 1989, she made oral statements to Officer Tammy L. Beard and oral and written statements to Detective William Earhart.

A.M.'s older sister, M.M., also testified at trial. She stated that Mr. Martin had asked her to rub his legs and that he placed her hand on "his penis." She testified that this activity occurred two or three times. M.M. testified that during the winter of 1989, she and Mr. Martin were in the family hot tub. She stated that Mr. Martin's hand "went into [her] swimming suit" and "went across [her] genital area, the top of it," and that Mr. Martin then pulled his hand out "very quickly like it was no big deal." M.M. testified that she was "very shocked," and she left the hot tub. This incident was the basis for count III, for which Mr. Martin was acquitted.

After A.M. reported her sexual activity with Mr. Martin, police authorities confronted Mr. Martin. He made statements to Detective Earhart. He denied culpability. However, Mr. Martin stated to Detective Earhart that he routinely tucked A.M. in bed at night and on one such occasion, he fell asleep on her bed. When he awakened, he said, his pants were around his knees and his "penis was lying on his stomach." He stated to Detective Earhart that A.M. told him not to tell her mother or anybody else what had happened. He told Detective Earhart that on two occasions he exited the shower wearing only a towel. He said that A.M. grabbed his penis through the towel. On another occasion, he said, he was "lying on his bed masturbating," and A.M. watched him "through the door." He also told Detective Earhart that A.M. changed into her swimming suit in his presence more than once when he was sitting in the hot tub located within the house. Mr. Martin told Detective Earhart that A.M. was sexually active with two

boys in the neighborhood. Mr. Martin recounted that once, while both Mr. Martin and A.M. were in the hot tub together, A.M. placed one of her feet between Mr. Martin's legs, and he moved away from her. Mr. Martin acknowledged threatening to send A.M. to a foster home, but he said that he made this threat to cause A.M. to stop trying to touch his penis.

Mr. Martin was convicted of the two counts alleging that he engaged in deviate sexual intercourse with A.M. He was acquitted of engaging in deviate sexual intercourse with M.M. After his convictions, Mr. Martin filed pro se his Rule 29.15 postconviction motion. An amended Rule 29.15 postconviction motion was filed in his behalf by counsel. A hearing was held on the motion. Mr. Martin's trial attorney testified at the hearing that he had not objected at trial to testimony that A.M. was sexually active with her younger brother X.M. because the evidence demonstrated "some knowledge of sexual activity either on her part or others allegedly perpetrating it against her." Mr. Martin's trial attorney also stated that A.M. had not mentioned during her deposition her involvement in sexual activity with her brother. By permitting A.M. to state such sibling involvement at trial, defense counsel said he was able to confront her on cross examination with her failure to recount such alleged activity before trial, and to argue that A.M. was not credible and that her allegations against his client were fabricated.

Mr. Martin's trial attorney also testified at the Rule 29.15 hearing that he had not filed a motion for a bill of particulars because the "open discovery" provided by the prosecuting attorney permitted him to know what the state's evidence would be on all three counts. He also stated that he had deposed both alleged victims and their mother, so he knew what they would say at trial.

The motion court found that Mr. Martin's trial attorney's decision not to object to A.M.'s claim of sexual activity with X.M., her brother, was "a valid trial strategy to attack the veracity of this victim to state that she was pointing the finger at a number of different people and that she was expanding on her accusations toward the defendant." The court stated that "while a motion for bill of particulars would probably have been sustained if filed," Mr. Martin's attorney knew the illegal conduct the state would attempt to prove because of his extensive pre-trial discovery in the case. The court overruled the Rule 29.15 motion.

I

■ Mr. Martin claims as his first point on appeal that because the victim's testimony was not corroborated, the trial evidence was insufficient to prove his guilt and the trial court erroneously overruled his motion for judgment of acquittal at the close of the evidence. He specifically alleges that A.M.'s testimony required corroboration because (1) A.M.'s pre-trial statements and trial testimony were contradictory, (2) A.M. was motivated to lie that she was sexually abused because she was discovered stealing an item from a Wal–Mart store and engaging in sexual activity with her brother, and (3) A.M.'s history reflected a propensity to lie.

When the sufficiency of the evidence is at issue, appellate courts consider all substantial evidence and inference in the light most favorable to the verdict and reject all contrary evidence and inferences. *State v. Sladek*, 835 S.W.2d 308 (Mo. banc 1992), at 310. Appellate courts do not weigh the evidence. *State v. Feltrop*, 803 S.W.2d 1, 11 (Mo. banc), *cert. denied*, — U.S. —, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). Appellate courts do not determine the credibility of witnesses. *State v. Hamilton*, 817 S.W.2d 8, 11 (Mo.App.1991). The jury determines the credibility of witnesses and may believe all, some or none of a witness's testimony in arriving at a verdict and resolving contradictions or conflicts in that testimony. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). Appellate review is limited in such cases to determining whether substantial evidence was presented from

which the jury could find the defendant guilty beyond a reasonable doubt. *Id.* Substantial evidence is evidence from which the trier of fact reasonably can find the issue in harmony with the verdict. *State v. Burns,* 795 S.W.2d 527, 529–30 (Mo.App.1990).

A single witness's testimony ordinarily is sufficient to constitute substantial evidence to make a submissible case. *State v. Sumowski,* 794 S.W.2d 643, 645 (Mo. banc 1990). The uncorroborated testimony of the victim in criminal sexual offense cases ordinarily is sufficient to sustain conviction. *State v. Sladek, supra,* at 310.

The Supreme Court of Missouri in the case of *State v. Baldwin,* 571 S.W.2d 236 (Mo. banc 1978), stated the exception to the general rule that a victim's testimony, even if uncorroborated, will ordinarily sustain a conviction. The court in *Baldwin* stated, "Where the evidence of the prosecutrix is of a contradictory nature or, when applied to the admitted facts in the case, her testimony is not convincing and leaves the mind of the court clouded with doubts, ... she must be corroborated or a judgment cannot be sustained." *State v. Baldwin,* 571 S.W.2d at 239.

The Eastern District in *State v. Nelson,* 818 S.W.2d 285, 288–90 (Mo.App.1991), presented the history of the exception to the rule and stated,

> No matter how worded, the exception requiring corroboration is restricted. It is limited to inconsistencies in the victim's statements and does not apply to inconsistencies between the victim's statements and the statements of other witnesses. Moreover corroboration is not required where the inconsistency or contradiction 'bears on a proof not essential to the case.' ... Unless there are gross inconsistencies and contradictions which bear on a proof essential to the case, 'a resolution of conflicts in the evidence and the determination of the credibility of the witnesses are matters for the jury to determine.'

*State v. Nelson,* 818 S.W.2d at 289 (citations omitted). The court in *Nelson* questioned whether the exception to the rule that a victim's testimony will ordinarily sustain a conviction is still the law in Missouri today. *Id.* at 289–90.

Mr. Martin identifies several inconsistencies in A.M.'s testimony. He notes that on direct examination, A.M. testified the first incident of oral sex between Mr. Martin and her occurred when Mr. Martin came to her bedroom. Mr. Martin claims this statement is inconsistent with other statements A.M. made. He refers to Detective Earhart's statement that A.M. told him the first incident of oral sex between herself and Mr. Martin occurred in the family's tree house. On cross-examination A.M. testified that she could not remember whether the first incident of oral sex between herself and the defendant occurred in the tree house or her bedroom. She stated that she thought it was in the tree house. Mr. Martin also notes A.M.'s testimony at trial was that Mr. Martin had entered the tree house before she entered but that in her deposition she stated that she had entered the tree house before Mr. Martin.

Mr. Martin contends that Officer Tammy Beard's testimony discloses the second inconsistency in A.M.'s testimony. Officer Beard testified that A.M. told her the last incident of sexual abuse occurred on June 14, 1989, when A.M. participated in oral sex with Mr. Martin in A.M.'s bedroom. During her trial testimony, A.M. stated that the June 14 incident occurred in the tree house where she had rubbed the appellant's penis with her hand. Mr. Martin testified that he was in the hospital on June 14, 1989. He produced a hospital bill from the Smithville Hospital showing his admission on June 14 and his release on June 16, 1989.

Finally, Mr. Martin claims A.M.'s testimony was inconsistent because she told both Officer Beard and Detective Earhart that Mr. Martin had required her to perform oral sex in the family hot tub. During A.M.'s deposition prior to trial, she did not mention any sexual incidents in the hot tub after being asked to identify the loca-

tions where sexual incidents had occurred. At trial, A.M. testified that two sexual incidents between Mr. Martin and her occurred in the hot tub where he whispered into her ear to "give him a rubdown."

As in *Nelson*, where the court found the exception inapplicable, *id.* at 290, the exception, if it exists, does not apply to Mr. Martin's contentions in this appeal. The victim's testimony is not so contradictory or in conflict with physical facts, surrounding circumstances, and common experience as to be unconvincing. *State v. Sipes*, 651 S.W.2d 659, 660 (Mo.App.1983). Evidence disclosed that the sexual encounters between Mr. Martin and A.M. occurred for approximately two years, once or twice a week. The information alleged violations during an approximate time period. The jury determined A.M.'s credibility, choosing to believe her testimony that sexual experiences occurred between Mr. Martin and her as alleged in the information and more specifically articulated in the verdict-directing instructions.

Mr. Martin argues that A.M. had incentive to fabricate the allegations to explain her sexual conduct with her brother and to avoid punishment for having been caught stealing an item at a Wal–Mart store. Additionally, Mr. Martin argues that several preceding incidents disclosed A.M. had lied about feeding her pets, dusting or performing other jobs she had been assigned around the house. Mr. Martin contends that these circumstances require corroboration of A.M.'s testimony. The issue of A.M.'s credibility was for the jury to determine. *State v. Nelson*, 818 S.W.2d at 289. Appellant's point I on appeal is denied.

## II

■ Mr. Martin claims as point II on appeal that the court erred in submitting the verdict-directing instruction for sodomy under count III of the indictment because the evidence was insufficient as a matter of law to sustain conviction for count III. Count III alleged the criminal act of sod-

omy with M.M., A.M.'s sister, two years older than she. Mr. Martin was acquitted on count III. He contends submission of count III allowed the jury to compromise its verdict of guilty to counts I and II.

M.M., 12 years old at the time of the alleged incident, testified that she was in the hot tub with other members of her family when Mr. Martin stuck his hand inside her one-piece bathing suit and his hand went "across [her] genital area, the top of it." The evidence, if believed by the jury, was sufficient to sustain a conviction for sodomy as charged in count III. Additionally, an accused has no standing to complain of the insufficiency of evidence to support a charge on which he has been acquitted. *State v. Witt*, 684 S.W.2d 906, 909 (Mo.App.1985). Point II is denied.

## III

As point III on appeal, Mr. Martin contends the trial court erred by permitting Officer Tammy Beard and Detective William Earhart to testify as to what A.M. told them regarding Mr. Martin's sexual relations with her. Mr. Martin claims such statements were inadmissible hearsay.

■ For the first time, Mr. Martin attempts to make an issue of the admissibility of Officer Beard's and Detective Earhart's testimonies relating to A.M.'s pretrial statements to them. Trial counsel did not object to the two witnesses' testimonies. The failure of a party to make a timely objection to the admissibility of evidence waives any right to challenge its admissibility on appeal. *State v. Robinson*, 782 S.W.2d 694, 696 (Mo.App.1989). Even hearsay evidence, if not properly objected to, is admissible. *State v. Mahany*, 748 S.W.2d 762, 766 (Mo.App.1988). Trial counsel's failure to make a timely objection waived any right to challenge the admissibility of out-of-court statements made to Officer Beard and Detective Earhart by A.M.

■ Mr. Martin entreats the court to review as plain error the unpreserved issue

of the introduction of A.M.'s out-of-court statements to Officer Beard and Detective Earhart. Appellate courts, applying the plain error rule, will set aside a lower court ruling only when the ruling affects the rights of the accused to the extent that manifest injustice or miscarriage of justice will occur if the ruling is uncorrected. *State v. Sandles*, 740 S.W.2d 169, 177 (Mo. banc 1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1303, 99 L.Ed.2d 513 (1988). The appellant has the burden of establishing that manifest injustice or miscarriage of justice will occur absent reversal. *Id.*

■ During defense counsel's opening statement, he spoke of A.M.'s June 16, 1989, statement to Officer Tammy Beard and A.M.'s oral and written statements to Detective Earhart the next day. Defense counsel specifically referenced A.M.'s written statement and discussed it in detail during his opening statement. When the written statement was offered by the prosecutor as evidence during the trial, defense counsel stated, "Defendant has no objection."

Although Mr. Martin contends that A.M.'s oral and written statements to police officers were initially referenced by the prosecuting attorney during his opening statement, review of the record does not support the claim. Although the prosecuting attorney informed the jury during his opening statement that A.M. and her natural parents went to the Kansas City, Missouri, Police Department on June 16, 1989, the prosecutor simply stated that A.M. told an officer what happened. The prosecutor made no additional comment during his opening statement about A.M.'s statements to police officers.

Mr. Martin's trial counsel, during cross-examination, attempted to highlight perceived inconsistencies between A.M.'s oral and written statements to the police officers and her in-court testimony. During closing argument, defense counsel again attempted to argue perceived inconsistencies between the out-of-court statements made by A.M., both oral and written, and A.M.'s trial testimony.

Defense counsel's opening statement comments regarding A.M.'s pretrial oral and written statements to police officers, his cross-examination of A.M., and his closing argument disclose that a part of his trial strategy was to emphasize perceived inconsistencies between A.M.'s prior oral and written statements and her in-court testimony. Thus, defense counsel, from the inception of the trial, consciously elected not to oppose introduction of A.M.'s out-of-court statements to demonstrate prior inconsistent statements. His strategy included introducing evidence that A.M. had not always been truthful, thereby hoping to further destroy her credibility. Thus, appellant's trial strategy that included intentionally not objecting to allegedly inadmissible evidence cannot be a basis to invoke the "plain error" rule for appellate review of evidence appellant sought to use to his advantage at trial. *State v. Rowe*, 806 S.W.2d 122, 125–27 (Mo.App.1991). Point III is denied.

IV

■ As his fourth point on appeal, Mr. Martin claims the trial court erred in allowing the state to present evidence that Mr. Martin compelled A.M. to engage in sexual activity with her younger brother. Mr. Martin contends that the testimony constituted evidence of an uncharged crime which did not tend to establish his guilt of the charged offenses. Trial counsel did not object to questions propounded to A.M. by the prosecutor about appellant compelling A.M. to perform sexual acts with her brother. Neither did trial counsel raise the issue and attempt to preserve it in appellant's motion for a new trial. Mr. Martin seeks plain error review. Plain error review is appropriate where the error complained of resulted in manifest injustice or miscarriage of justice. *State v. Sandles*, 740 S.W.2d at 175.

A.M. testified that while she was engaging in a sexual act with Mr. Martin, he

suggested to her that her younger brother, X.M., "might enjoy something like this, too." A.M. stated that she initially resisted, but later "did what he told [her] to do" because she was frightened of Mr. Martin. She stated that Mr. Martin warned her that if her mother ever found out what she and he were doing that her mother would send A.M. to a home and divorce him. She testified that Mr. Martin told her "that he had a gun and he'd use it if he had to."

Mr. Martin's trial counsel intentionally did not object to introduction of evidence that A.M. alleged she had been sexually active with her younger brother at Mr. Martin's insistence. Defense counsel chose to elicit from witnesses and to comment on A.M.'s claims of sexual activity in furtherance of his tactic to discredit A.M. Mr. Martin's defense counsel first mentioned the purported sexual activity between A.M. and her brother during his opening statement. Before A.M. testified, defense counsel cross-examined Detective Earhart concerning A.M.'s purported sexual contact with her younger brother. Defense counsel elicited from Detective Earhart out-of-court comments made by Mr. Martin indicating, if believed, that A.M. was inappropriately sexually aggressive toward him and that he rebuffed her advances. Defense counsel also elicited from Detective Earhart information that A.M. was promiscuous with two boys living in her neighborhood.

Testifying during the Rule 29.15 hearing, appellant's trial counsel stated that he had not objected at trial to testimony that "A.M. was sexually active with X.M., her younger brother," because the testimony demonstrated "some knowledge of sexual activity either on her part or others allegedly perpetrating it against her." Trial counsel mentioned that A.M. failed to mention this purported activity during her deposition and such failure permitted him to argue that she was fabricating events. He further testified that because A.M.'s younger brother, X.M., was not listed as a witness by the state, he knew X.M. would not testify to corroborate the allegation.

Trial counsel's intentional decision to permit the introduction of A.M.'s comments that appellant had in some way compelled her to engage in sexual activity with her younger brother was a trial strategy. Intentionally failing to object to alleged inadmissible evidence as trial strategy cannot invoke the "plain error" rule for appellate review. *State v. Rowe,* 806 S.W.2d at 125–27.

■ Appellant's point is also deniable because the law would have permitted introduction of the protested evidence even if defense counsel had objected. The state may introduce evidence of prior sexual activity involving (1) the defendant and the victim, and (2) the defendant and other siblings in prosecution for sexual offenses involving children. *State v. Lachterman,* 812 S.W.2d 759, 768 (Mo.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992); *State v. Osterloh,* 773 S.W.2d 213, 216 (Mo.App.1989); *State v. Christeson,* 780 S.W.2d 119, 122–23 (Mo. App.1989). Mr. Martin's claim that the trial court erroneously failed to preclude introduction of the evidence, sua sponte, that Mr. Martin encouraged A.M. to engage in sexual conduct with her younger brother is rejected. Point IV is denied.

V

As his fifth point on appeal, Mr. Martin claims the trial court erred in failing to declare a mistrial, sua sponte, because of a purportedly offensive statement made by the prosecuting attorney during closing argument. Trial counsel did not object to the prosecutor's statement. Neither was the issue raised in Mr. Martin's motion for new trial. Mr. Martin seeks plain error review. *See State v. Sandles,* 740 S.W.2d at 177.

During closing argument, the prosecuting attorney stated, "He's [referring to Mr. Martin] got the nerve to make A.M., a child of ten or eleven, give him a massage in her bedroom. If that's not wrong, I don't know what is." Mr. Martin contends that the prosecutor's personal belief that having

A.M. massage Mr. Martin's legs in her bedroom was wrong may have influenced the jury to convict Mr. Martin of two of the crimes charged even if the jury was not convinced that he was guilty of the offenses.

As part of Mr. Martin's defense, he acknowledged that A.M. massaged his legs, and he said that as she did, she may have inadvertently touched his penis. Mr. Martin claimed his requests for massages were innocent. He acknowledged that when A.M. massaged his legs, he frequently wore a bathrobe and no undergarments.

■ The trial court exercises broad discretion in controlling closing arguments. *State v. Allen*, 829 S.W.2d 524, 528 (Mo. App.1992). Trial counsel are given wide latitude in making summations. *State v. Wade*, 826 S.W.2d 843, 845 (Mo.App.1992). Trial counsel are permitted to make reasonable inferences from the evidence during argument. *State v. Allen*, 829 S.W.2d at 528. Trial counsel may state opinions or conclusions that fairly draw from the evidence, and counsel may draw any inference from the evidence that he believes is justified in good faith. *State v. Wade*, 826 S.W.2d at 845. Counsel may draw nonevidentiary conclusions from the evidence. *State v. Frison*, 775 S.W.2d 314, 318–19 (Mo.App.1989).

■ A conviction will be reversed for improper argument only where the argument is "plainly unwarranted," and only then if the state's remarks had a "decisive effect" on the jury's verdict. *State v. Davis*, 825 S.W.2d 948, 951–52 (Mo.App. 1992). In the absence of an objection and request for relief, the trial court's options are limited to uninvited interference with summation. *State v. Vinson*, 833 S.W.2d 399, 407 (Mo.App.1992). Statements made in closing arguments seldom amount to plain error necessitating reversal. *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992). Improper argument justifies relief as "plain error" only where no relief short of a mistrial could cure the error. *Id.* To

justify relief, the improper comment must have decisively affected the verdict, and the appellant has the burden of demonstrating such effect. *State v. Vinson*, supra, at 407.

■ When the prosecuting attorney made the remark complained of by Mr. Martin during closing argument, the prosecutor was reviewing the evidence adduced at trial. Mr. Martin admitted during his testimony that he had requested A.M. to massage his upper thighs. He acknowledged that these massages sometimes occurred when he and A.M. were alone in her bedroom. He acknowledged that he occasionally wore only a bathrobe without undergarments. He acknowledged that on occasions when A.M. massaged his legs, she may have touched his genitals. A.M. and her older sister testified that Mr. Martin was usually naked, except for undershorts or a bathrobe when they massaged his legs. They stated that their hands would inevitably touch or "brush" appellant's penis. Considering the state's interest in protecting minors from inappropriate conduct, the prosecutor's inference from the evidence that Mr. Martin's asking and obtaining leg massages in A.M.'s bedroom when he was scantily clad and contact with his genitals by minor masseuses was routine was inappropriate was a reasonable inference from the evidence. Point V is denied.

## VI

■ Mr. Martin contends as point VI on appeal that the trial court abused its discretion in imposing consecutive sentences and in denying Mr. Martin's request for probation. Mr. Martin claims that by exercising his right to trial, the trial court was offended because A.M. and M.M. were compelled to testify about the incidents of sexual activity with him. He says this is why the trial court denied probation and imposed consecutive sentences. Mr. Martin complains that his federal and state constitu-

tional rights which guarantee him the right to trial by jury and to due process of law were violated.

Normally, the trial court exercises discretion to impose concurrent or consecutive sentences during the sentencing process. *State v. Loewe,* 756 S.W.2d 177, 184 (Mo. App.1988). Also, the trial court normally exercises discretion to impose or deny probation where the law permits. *State v. Keller,* 685 S.W.2d 605, 606 (Mo.App.1985). However, a sentencing court cannot violate a defendant's rights to plead not guilty and to demand a jury trial. *Thurston v. State,* 791 S.W.2d 893, 896 (Mo.App.1990).

During the sentencing hearing, Mr. Martin's attorney argued that his client should receive concurrent sentences on the five- and ten-year sentences recommended by the jury, and that execution of the sentences should be suspended and Mr. Martin should be placed on probation. Following the proposal, the following dialogue occurred between Mr. Martin and the trial court:

DEFENDANT: When I talked to Mr. White, I felt one of the main concerns in this case, at the end of it, was the fear that the family had of me. It was my agreement to leave and to allow that family to go on with my business, to insure them able to rebuild.

THE COURT: Well, the court is appreciative of that attitude. I sincerely am. I think that is a touch of decency in the situation. And I think you all probably attach more importance to the victim impact statement than I have. My reluctance t[o] grant probation and my reluctance in granting consecutive sentences come instead from having had the opportunity and the unfortunate privilege of observing these young people who have to come here and testify about what has happened and realizing the impact on their life, (sic) that I can't undo. And unfortunately, it was something that you chose to subject them to twice, first when you subjected the young ladies to your sexual advances and to engaging in sexual activity with you. Secondly, when by reason of your exercising your right to your trial which you have ever (sic) right to do, and obviously you were found not guilty on the one. So there was good reason for you to demand that trial. But nevertheless, the effect of the trial has been to let them relive that in front of twelve, thirteen people, really more like fourteen or fifteen here in the courtroom, that they didn't know, and to describe conduct their age shouldn't hardly know about, let alone having engaged in. I think it's been accurately described, there are two Mr. Martins. There's one that all these folks wrote me about. Mr. Martin, you ought to be thankful for friends like that, because sooner or later you are going to need them. As Mr. White says, whether I let you out today or somebody else lets you out one year, two years, five years, ten years, whatever from now, there is a day that the day is going to open and you're going to walk back out and you're going to need those friends even then or as much as you need them now. I hope that they are the kind of friends that will stay with you and be there when that time comes.

... The court, however, having considered all of the options to incarceration find (sic) none acceptable or proper herein, and therefore probation is denied.

In the case of *Thurston v. State,* 791 S.W.2d at 896, the Eastern District, citing *United States v. Medina–Cervantes,* 690 F.2d 715, 716 (9th Cir.1982), stated:

It is well settled that an accused may not be subjected to more severe punishment simply because he exercised his right to stand trial.... The 'courts must not use the sentencing power as a carrot and stick to clear congested calendars, and they must not create an appearance of such a practice.' ... Although we do not doubt the good faith of the district judge, we find that the above-quoted statements clearly give rise to the inference that Medina–Cervantes was pun-

ished more severely because of his assertion of the right to trial by jury. . . .

The court in *Thurston* stated,

A practice which discourages the fifth amendment right not to plead guilty, which deters the sixth amendment right to demand a jury trial and which chills the assertion of these constitutional rights by penalizing those who choose to exercise them is patently unconstitutional. *United States v. Jackson,* 390 U.S. 570, 581, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138, 147 (1968).

With reference to movant, the only reasons articulated by the trial judge for imposing the maximum sentence on each count and for ordering each sentence to be served consecutively was that movant refused to plea bargain and insisted upon his right to a trial by jury. Enhancement of punishment based solely upon a defendant's refusal to plead guilty and to exercise his right to have his guilt proven beyond a reasonable doubt has been universally condemned.

*Id.* at 896.

The United States Court of Appeals for the Eighth Circuit stated in *Hess v. United States,* 496 F.2d 936, 938 (8th Cir.1974), that "[w]hether a defendant exercises his constitutional right to trial by jury to determine his guilt or innocence must have no bearing on the sentence imposed." Citing *United States v. Marzette,* 485 F.2d 207 (8th Cir.1973).

Although the trial judge is not permitted to sentence a convicted defendant to a greater sentence solely because defendant exercised his constitutional rights to require the state to prove him guilty beyond a reasonable doubt in a jury trial, the trial judge may consider the evidence in the defendant's background demonstrated at trial when imposing the sentence. *Thurston v. State,* 791 S.W.2d at 897; *State v. Davis,* 582 S.W.2d 342, 343 (Mo.App.1979). In *Davis,* the trial court imposed a more severe punishment than that offered to the defendant in a plea bargain. *State v.*

*Davis,* 582 S.W.2d at 343. However, the trial court expressed consideration of the nature of the crimes shown by the evidence at trial and of the defendant's background. *Id.* Citing *Davis,* the court in *Thurston* noted that, "The trial judge's testimony clearly establishes that movant's fate, if found guilty by the jury, was fixed at the maximum allowable punishment from the very moment movant refused to plead guilty," thereby violating the defendant's constitutional rights. *Thurston v. State,* 791 S.W.2d at 897.

The court in *Thurston* also noted that the judge, in a hearing on whether the sentencing judge had unlawfully sentenced the defendant, testified that if "you go to trial as a persistent or prior offender and get convicted, I am more than likely going to give you a max-type sentence and I am going to run them consecutive. It's been consistent with me for twelve years now." The appellate court condemned this practice as "an unvarying predetermination of issues which require the exercise of judicial discretion on a case-by-case basis." *Id.* at 896. The *Thurston* court found such approach to be in violation of § 557.036, RSMo 1986, which imposes an affirmative duty upon a trial judge to evaluate each defendant and to fashion an appropriate disposition. *Id.* at 897.

Unlike *Thurston,* the record in this case does not support Mr. Martin's contention that the sentencing court penalized him for exercising his constitutional rights to trial by jury. The sentencing court referenced the victim's trial testimony and her sister's testimony regarding the criminal charges. The court noted that it was impacted by the consequences of the events to the two minors' lives. The court also was conscious of the impact on the lives of the victim and her sister resulting from their testimony recounting for the people present during the trial the events which prompted the criminal charges. Unlike the case of *Thurston,* the sentencing court in this case did not demonstrate a practice of imposing maximum sentences on defendants who ex-

ercise their rights to trial by jury. The court noted that Mr. Martin was acquitted on count III and that he was probably correct for proceeding to trial. The court did not enhance punishment because Mr. Martin refused to plead guilty and to exercise his right to have his guilt proven beyond a reasonable doubt. *Thurston v. State*, 791 S.W.2d at 896. Point VI is denied.

## VII.   Rule 29.15 Postconviction Motion

Mr. Martin contends as his seventh point on appeal that his trial counsel's failure to file a bill of particulars prior to trial to determine the specific facts constituting the basis for the charges in counts I and II denied him effective assistance of trial counsel in violation of the sixth and fourteenth amendments to the United States Constitution and article I, §§ 10 and 18(a) of the Missouri Constitution. Mr. Martin claims as a result of his trial counsel's failure to file a motion for a bill of particulars that his counsel lacked knowledge of the state's evidence against which Mr. Martin had to defend. Additionally, he contends that because the bill of particular was not filed, the record fails to protect him from double jeopardy.

Counts I and II are written identically. Both counts state:

> The grand jury of the County of Clay, State of Missouri, charge that the defendant, in violation of section 566.060, RSMo, committed the class B felony of sodomy upon conviction under section(s) 558.011.1(2), RSMo, in that on or about June 1, 1989–June 14, 1989, in the County of Clay, State of Missouri, defendant had deviate sexual intercourse with A.M. to whom the defendant was not married and who was less than fourteen years of age.

Although the language of Counts I and II of the information are identical, the verdict-directing instructions are not. The verdict-directing instruction for Count I required as an element, that, to find Mr. Martin guilty of Count I, the jury must find that Mr. Martin "placed his penis in the hand of A.M." The verdict-directing instruction for count II compelled the jury, in order to find Mr. Martin guilty of count II, to find Mr. Martin "placed his penis in the mouth of A.M."

During the hearing on Mr. Martin's Rule 29.15 motion, his trial counsel stated that he had adequate discovery before trial. He testified that he had deposed M.M., A.M., and their mother, Mr. Martin's wife. Additionally, Mr. Martin's trial counsel testified that the State of Missouri provided open discovery on all the evidence in its file. Mr. Martin's trial counsel testified that he completed all of the discovery that he wanted to complete and that he was satisfied with the open file discovery provided by the state.

■ The identical language of counts I and II of the information does not invalidate either count. *State v. Riggs*, 770 S.W.2d 361, 362 (Mo.App.1989). Additionally, the identical language of the two counts does not, alone, entitle the defendant to a bill of particulars if requested. *State v. Burch*, 740 S.W.2d 293, 294–95 (Mo.App.1987).

■ The failure of defense counsel to request a bill of particulars does not constitute ineffective assistance of counsel where the information is sufficient to charge the crime alleged, *Henderson v. State*, 789 S.W.2d 498, 503–04 (Mo.App.1990), especially when defense counsel had access to the state's file and knew the prosecution's evidence. *Williamson v. State*, 628 S.W.2d 895, 898 (Mo.App.1981). Each of the counts for which Mr. Martin was convicted alleged the essential facts constituting a violation of § 566.060. The charges contained in counts I and II of the information, the depositions of the state's principal witnesses, including the alleged victims' depositions, and disclosure by the state of its file raises the presumption that Mr. Martin was sufficiently informed of the details of the charges to enable him to prepare his

defense. *See Williamson v. State*, 628 S.W.2d at 898. Defense counsel's failure to seek a bill of particulars did not affect the outcome of the trial.

Mr. Martin contends that the language used in counts I and II does not adequately detail the acts for which he was charged and thereby fails to protect him from being subjected to double jeopardy in the future. In the case of *State v. Rudd*, 759 S.W.2d 625 (Mo.App.1988), the Southern District addressed the appeal of a defendant convicted of five counts of raping his thirteen-year-old daughter. Counts II, III, and IV of the information charged that the defendant committed the offense in each of the three counts "between the dates of February 15, 1986, and March 20, 1986." The defendant contended that the indefinite specification of time in each of the three counts inhibited his ability to assert double jeopardy in the event of acquittal of any of the charges. *Id.* at 627–28. The court was not persuaded that the defendant was prejudiced, noting that the court could look at the whole record to determine the validity of a plea in abatement based on former jeopardy. *Id.* at 628. The court noted that a court considering a plea in abatement based on former jeopardy could, if necessary, receive and consider parol evidence. *Id.* A significant part of the record in this case is the jury instructions.

The verdict-directing instructions specifically state the elements which the jury was compelled to find in order to find Mr. Martin guilty of the crimes charged. In a proceeding to determine the validity of a plea of abatement based on former jeopardy, the verdict-directing instructions would be valuable evidence.

Appellate review of the denial of a Rule 29.15 postconviction motion is limited to determining whether the findings of fact and conclusions of law of the hearing court are clearly erroneous. *State v. Twenter*, 818 S.W.2d 628, 635 (Mo. banc 1991). Findings of fact and conclusions of law are "clearly erroneous" only if after review of the entire record the court is left with the definite and firm impression that a mistake has been made. *State v. Schaal*, 806 S.W.2d 659, 667 (Mo. banc 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 976, 117 L.Ed.2d 140 (1992).

The successful movant in a claim of ineffective assistance of counsel at trial must establish, by a preponderance of the evidence (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).

Mr. Martin failed to prove by a preponderance of the evidence that his trial attorney's performance in failing to move for a bill of particulars for Counts I and II of the information did not attain the standard of performance to which he was entitled pursuant to the sixth and fourteenth amendments to the United States Constitution and article I, § 18(a) of the Missouri Constitution. Point VI is denied.

■ As his last point on appeal, Mr. Martin claims that he was denied effective assistance of trial counsel in violation of the sixth and fourteenth amendments of the United States Constitution and article I, §§ 10 and 18(a) of the Missouri Constitution in that his trial attorney failed to object to the state's introduction of evidence that he had compelled A.M. to engage in sexual activity with her younger brother, X.M. Defense counsel testified at the evidentiary hearing on Mr. Martin's Rule 29.15 motion that he believed A.M.'s testimony and her pre-trial statements that Mr. Martin encouraged sexual activity between A.M. and her younger brother would demonstrate that A.M. had sexual knowledge independent of appellant and that A.M. had fabricated allegations, thereby discrediting her. Trial counsel's strategy is more thoroughly discussed in point IV. The failure to object to the evidence was calculated and intentional. Mr. Martin has failed to prove

by a preponderance of the evidence that his trial attorney provided less than the customary skill and diligence that a reasonably competent attorney would exhibit under similar circumstances. *See Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Point VI is denied.

The judgment of conviction and the sentences imposed for each of counts I and II of the information are affirmed. The judgment denying Mr. Martin's Rule 29.15 post-conviction motion is affirmed.

All concur.