STATE of Missouri, Respondent,

v.

Russell E. BUCKLEW, Appellant.

No. 80052.

Supreme Court of Missouri,
En Banc.

May 26, 1998.

Rehearing Denied Aug. 25, 1998.

Frederick A. Duchardt, Jr., Kearney, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERTSON, Judge.

A jury convicted Russell E. Bucklew of first degree murder, section 565.020, RSMo 1994; kidnapping, section 565.110, RSMo 1994; first degree burglary, section 569.160, RSMo 1994; found two aggravating circumstances, and recommended the death sentence. The trial court sentenced Bucklew to death. Bucklew appeals. We have jurisdiction. Mo. Const. art. V, sec. 3. The judgment is affirmed.

## I.

We take the facts in the light most favorable to the verdict.

Russell Bucklew apparently did not want to live apart from Stephanie Ray. The two had lived together in Cape Girardeau County until Ray decided to break up with Bucklew on Valentine's Day, 1996. Bucklew left their mobile home and went to live with his parents.

On March 6, Bucklew returned to the trailer. he had shared with Ray, found Michael Sanders, the victim in this case, there, concluded that Sanders and Ray were romantically involved, put a knife to Sanders's throat, and threatened to kill Sanders if Sanders even came back to Ray's trailer. Later that same evening, Bucklew returned to the trailer, found Ray alone, threatened her with a knife, cut her jaw, and punched her in the face before leaving. Ray reported all this to the police.

Bucklew called Ray at work the following day, March 7. He threatened her again and promised to kill her, Sanders, and her children if he saw her with Sanders again.

Ray moved in with Sanders, fearing to return to her own home.

Sometime during the night of March 20–21, Bucklew stole his nephew's car, two of his brother's pistols, two sets of his brother's handcuffs, and a roll of duct tape. He left a note asking his family not to report his theft to the police. By the afternoon of March 21, Bucklew began surreptitiously following Ray as she left work and ran errands, ultimately discovering where she lived by following her to Sanders's trailer. Bucklew waited for some period of time before he knocked on Sanders's trailer door. One of Sanders's children opened the door. Sanders saw Bucklew through a window, escorted the children to a back bedroom and grabbed a shotgun. Bucklew entered the trailer with a pistol in each hand. Sanders came into the hallway carrying the shotgun. Appellant yelled "get down" and without further warning began shooting at Sanders. Sanders fell, struck by two bullets, one of which entered his chest and tore through his lung. Sanders dropped the shotgun. It went off and blew a hole in the trailer wall.

Bucklew aimed the gun at Sanders's head, but when he saw Sanders's six-year-old son, Bucklew fired at the boy instead. The shot missed.

Ray stepped between Bucklew and Sanders, who was holding his chest as he slumped against the wall. Bucklew invited Ray to drop to her knees. When she delayed, he struck her face with a pistol. He produced handcuffs, handcuffed her hands behind her back and dragged her to the car. The two drove away.

During the journey that followed, Bucklew demanded sex. When all of the acts he demanded were not performed, Bucklew raped Ray in the back seat of the car. Resuming the journey, Bucklew drove north on Interstate 55.

By this time law enforcement authorities had broadcast a description of the Bucklew car. Trooper James Hedrich saw the car,

called for assistance, and began following Bucklew. We need not prolong the account beyond reporting that the highway patrol ultimately apprehended Bucklew following a gunfight in which both a trooper and Bucklew were wounded by gunshot.

Michael Sanders bled to death from his wounds.

Additional facts necessary to consider Bucklew's appeal follow as we consider his legal arguments against his conviction and sentence.

## II.

### Statement to Police

Bucklew claims that the trial court erred in overruling his motion to suppress a statement he made to police and in receiving the statement into evidence at trial. He challenges the statement on two grounds. First, he claims that the statement was the product of a coercive interrogation in which officers failed to "scrupulously honor" his invocation of his right to remain silent. Second, he claims that the statement was not voluntarily, knowingly and intelligently made.

■ Once the admissibility of a statement has been challenged, the State bears the burden of demonstrating by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently made the statement.

On March 22, shortly after the Missouri highway patrol wounded Bucklew in the gunfight he precipitated, and while he remained in the hospital receiving treatment, Al Riehl of the Missouri highway patrol, approached Bucklew, read him his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and asked if Bucklew wished to give a statement about the events of March 21. Bucklew told Riehl that he did not wish to make any comment. Riehl immediately ceased questioning and left the hospital.

March 26, after five days of treatment, the hospital released Bucklew. The Cape Girardeau County sheriff transported him to the sheriff's office. When Bucklew arrived, Riehl approached Bucklew again, read him his *Miranda* warnings and asked him if he would like to give a statement. Bucklew responded, "yes, but it would take a long time."

After executing a standardized written "Notification and Waiver of Rights" form, Bucklew gave a lengthy videotaped statement about the events of March 21, 1996. The videotape contains many statements inculpating Bucklew. Bucklew subsequently moved to suppress the videotape. The trial court overruled Bucklew's motion to suppress.

> Court finds that with reference to video statement of Defendant that Defendant was advised of his rights pursuant to *Miranda v. Arizona* and that Defendant understood said rights and that the statement in question was freely and voluntarily made without threat or cosercion [sic]. (L.F. p. 225).

Bucklew assigns error to the trial court's failure to suppress the videotaped statement and in allowing the statement into evidence at trial. His first attack is based on his belief that the police did not "scrupulously honor" his original invocation of his right to remain silent.

### A.

■ Under *Miranda v. Arizona*, 384 U.S. 436, 437–474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the rights of persons in custody are clear:

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.

However, under *Michigan v. Mosley*, 423 U.S. 96, 102, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975):

> [N]either [the above] passage nor any other passage in the *Miranda* opinion can sensibly be read to create a *per se* proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent.

Here, Riehl read Bucklew his rights at the hospital, and asked if he wanted to make a statement, on March 22. Bucklew did not. At that point, applying *Miranda* and *Mosley*, Bucklew expressed his present intent to exercise his Fifth Amendment privilege. Riehl immediately cut off questioning. Bucklew never indicated that he wished to be represented by counsel. On March 26, Riehl asked Bucklew again if he wanted to give a statement. Bucklew argues that this question violates his Fifth Amendment rights.

■ Once a suspect invokes Fifth Amendment privileges interrogation must cease and the right to remain silent must be scrupulously honored. *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Of course this prohibition applies only to "interrogation." [1] *Rhode Island v. Innis*, 446 U.S. 291, 301–302, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). It does not apply to administrative questioning or to questions that the police have no reason to believe will elicit an incriminating response. *Innis* at 301–302, 100 S.Ct. 1682. Whether a defendant's Fifth Amendment rights have been scrupulously honored is fact specific. *Jacobs v. Singletary*, 952 F.2d 1282, 1293 (11 th Cir. 1992); *Jackson v. Dugger*, 837 F.2d 1469, 1472 (11 th Cir.), *cert. denied*, 486 U.S. 1026, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988).

■ Many courts have faced situations that closely parallel the facts preceding Bucklew's statement in this case. *See, e.g., Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *West v. Johnson*, 92 F.3d 1385 (5 th Cir.1996); *Jacobs v. Singletary*, 952 F.2d 1282 (11 th Cir.1992); *Nelson v. Fulcomer*, 911 F.2d 928 (3 rd Cir.1990); and *Jackson v. Wyrick*, 730 F.2d 1177 (8 th Cir.1984). The consensus of these cases is that, after a suspect initially invokes the right to remain silent, the police are not indefinitely precluded from asking whether the suspect has changed her mind and wants to talk. Factors courts weigh to determine whether the right to remain silent has been scrupulously honored include: (1) whether the police immediately ceased the interrogation upon defendant's request; (2) whether they resumed questioning only after the passage of a significant period of time and provided fresh *Miranda* warnings; (3) whether the object of subsequent interrogation was to wear down the resistance of the suspect and make him change his mind; (4) how many subsequent interrogations were undertaken; and (5) whether subsequent questioning involved the same crime. *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *Jackson v. Wyrick*, 730 F.2d 1177 (8 th Cir.1984). We apply these facts now.

### 1.

Police ceased any attempt to initiate questioning immediately upon Bucklew's indication that he did not wish to make a statement.

### 2.

Courts have found law enforcement officials to have honored a suspect's right to terminate questioning scrupulously in cases where as little as a few hours separated a suspect's invocation of the right to remain silent and a subsequent interrogation. *See Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (just over two hours); *United States v. Corral–Martinez*, 592 F.2d 263, 267 (5 th Cir.1979) (just over four hours); *United States v. Udey*, 748 F.2d 1231 (8 th Cir.1984) (multiple interrogations—six hours, three days and two days in between); *West v. Johnson*, 92 F.3d 1385 (5 th Cir.1996) (over 13 hours). Here police

---

**1.** "[I]nterrogation, under *Miranda*, refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

waited five days before asking if Bucklew wished to make a statement.

And in cases in which suspects are freshly Mirandized prior to any attempts to resume an interrogation, courts find the suspect's original invocation of the right to remain silent scrupulously honored. *See, e.g., Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

Here, Riehl read Bucklew his *Miranda* warnings both at the hospital and at the sheriff's office. This fact is noted throughout the record. Further, the videotape itself reveals:

> Riehl: ... I read you your rights downstairs and, and, you signed the release. Is that correct?

> Bucklew: Yes, sir.

It is clear that Bucklew received *Miranda* warnings before each of the two instances in which the police asked him if he wanted to give a statement.

### 3. & 4.

Courts must also determine whether the interrogators attempted to wear down the resistance of a suspect and make him change his mind through compulsion. *See Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). As an indication of this motive, courts also look to the number of subsequent interrogations attempted by officers after the original invocation of the right to remain silent.

There are many cases in which courts have found that officers "scrupulously honored" a suspect's right to remain silent when two or more subsequent attempts to interrogate occurred. *See Michigan v. Mosley,* 423 U.S. at 104, 96 S.Ct. 321; *United States v. Corral–Martinez,* 592 F.2d 263, 267 (5ᵗʰ Cir.1979); *United States v. Udey,* 748 F.2d 1231, 1241 (8ᵗʰ Cir.1984); *West v. Johnson,* 92 F.3d 1385 (5ᵗʰ Cir.1996). Here, officers waited five days until re-asking Bucklew whether he wanted to give a statement. Under these circumstances the officers "scrupulously honored" Bucklew's Fifth Amendment rights.

### 5.

This case differs from *Michigan v. Mosley,* which distinguishes between other crime inquiries and same crime inquiries. In *Mosley,* the defendant, was taken into custody and questioned in connection with certain robberies. He was given *Miranda* warnings and elected to remain silent. Interrogation ceased. Two hours later, another detective questioned Mosley about a murder unrelated to the robberies. Mosley gave an inculpating statement about the murder. The Supreme Court upheld the constitutional validity of this process. This case differs from *Mosley* in that the second inquiry here referenced the same crime and was posed by the same officer.

We observe, however, that the subject matter of a subsequent police inquiry is merely a factor that courts weigh in reaching a decision about whether police scrupulously honored a suspect's rights. The fact that subsequent police inquiry focuses on the same crime does not compel the conclusion that Fifth Amendment rights were not honored. *Jackson v. Wyrick,* 730 F.2d 1177, 1180 (8ᵗʰ Cir.1984). This is because merely asking a defendant whether he has changed his mind and wants to give a statement is not a question one would reasonably expect to elicit an incriminating response. Therefore, such a question is not an "interrogation" as defined by *Innis.*

On these facts, the police scrupulously honored Bucklew's rights.

The point is denied.

### B.

### *Knowingly and Intelligently*

Bucklew's alternative theory for the claim that the videotape should have been suppressed is that his medical condition at the time of this videotaped statement rendered the statement unknowing and unintelligent. He does not claim that police coerced him in any way sufficient to make his statement involuntary. He claims that his ability to understand the choices put before him was compromised by his injuries, pain he was suffering and medication he was taking for that pain.

On review " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Id.* The determination of whether a waiver is knowing and intelligent depends on the facts and circumstances surrounding that case and review is based on the totality of the circumstances, taking into account the background, experience and conduct of the accused. *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

The challenged videotape begins with Bucklew stating that he earlier received *Miranda* warnings and that he signed a written waiver of rights. He clearly was informed of his rights. His waiver was knowing.

We next consider whether he understood those rights; that is, whether his waiver was intelligent. Bucklew argues his waiver was not intelligent because of his deficient mental condition. However, a deficient mental condition, whether manifested by delusional behavior or a positive drug test, does not by itself render a statement unintelligent. A defendant does not have the constitutional right " 'to confess to his crime only when totally rational and properly motivated.' " *State v. Smith*, 944 S.W.2d 901, 911 (Mo. banc), *cert. denied*, —— U.S. ——, 118 S.Ct. 377, 139 L.Ed.2d 294 (1977); *Colorado v. Connelly*, 479 U.S. 157, 166, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

Our review of the videotaped statement reveals that Bucklew was articulate and alert throughout the taping. During the entire videotaped statement—which runs nearly two hours—Bucklew spoke clearly, without confusion or uncertainty. He provided details from fights with Stephanie Ray, beatings he inflicted upon her and threats he made to her and others. Bucklew was rational and he offered his reasons for his motivation for giving the statement:

Riehl: I think we'll just let you rest now, Rusty, unless you want to talk some more. I'll be glad to sit here and listen to you.

Bucklew: I would like to talk some more. It feels good to get this sh—— off my chest if you don't mind.

Riehl: Sure.

When ruling on a motion to suppress "[a] judge need not make any particular formal finding. The only prerequisite is that the trial court's conclusions make unmistakably clear that the confession is voluntary." *State v. Schnick*, 819 S.W.2d 330, 336 (Mo. banc 1991). "If one is informed of his right to remain silent under *Miranda*, and understands his right to remain silent under *Miranda*, and thereafter makes voluntary statements, it is absurd to say that such person has not made a knowing and intelligent waiver of his right to remain silent." *State v. Skillicorn*, 944 S.W.2d 877, 890 (Mo. banc 1997); *State v. Schnick*, 819 S.W.2d 330, 336 (citing *Sims v. Georgia*, 385 U.S. 538, 541–43, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967)). The trial court found that the statement was freely and voluntarily given; it was also knowingly and intelligently given.

The trial court did not err in overruling Bucklew's motion to suppress or for admitting the statement into evidence.

### Alleged Invocation of Right to Counsel

Bucklew suggests that he invoked his right to counsel during the videotaped statement and that the law enforcement personnel failed to honor his right to counsel by continuing questioning. The videotape reveals:

Bucklew: Well do you think I should have an attorney present?

Riehl: I can't tell you that Rusty.

Bucklew: How fast could you get an attorney here?

Riehl: Well, I don't know. I don't, I wouldn't, that would be up to you.

Bucklew: I mean, a public defender is all I can handle.

Riehl: Ya; ya; if, if, if, if that's what you want to do you just have to tell me that and I

Bucklew: I don't know man.

Then Bucklew continued telling his version of the events surrounding his relationship with Stephanie Ray. *Edwards v. Arizona*, 451 U.S. 477, 480, n. 6, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), interprets the Fifth Amendment to require an actual, unambiguous, unequivocal request for counsel to trigger the Fifth Amendment right to counsel and require that interrogation cease. Bucklew's "request" here is ambiguous and equivocal. It does not rise to the certainty of expression that constitutes a valid request for an attorney under Fifth Amendment jurisprudence.

### *Harmless Error*

 Even assuming it was error to admit the videotape, for the reasons that follow, we conclude that the court's refusal to exclude the statement would at most constitute "harmless error beyond a reasonable doubt" within the meaning of *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

In *Arizona v. Fulminante*, 499 U.S. 279, 309–11, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the Supreme Court held that the *Chapman* harmless error rule applies to the admission of an involuntary confession. In situations where the harmless error rule applies, the Supreme Court has repeatedly reaffirmed the principle that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The state must demonstrate that the challenged evidence did not contribute to the defendant's conviction. *Fulminante*, 499 U.S. at 296, 111 S.Ct. 1246, *citing Chapman*, 386 U.S. at 26, 87 S.Ct. 824.

In order to convict a person of first degree murder the state must prove beyond a reasonable doubt that the defendant knowingly took the life of another after deliberation upon the matter. Section 565.020, RSMo 1994. Videotaped statement aside, there is overwhelming evidence supporting each element of first degree murder.

 Deliberation means cool reflection for any length of time no matter how brief. Section 565.002(3), RSMo 1994. Deliberation may be inferred from any circumstances that indicate such reflection. *State v. Brown*, 902 S.W.2d 278, 288 (Mo. banc 1995), *cert. denied*, 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). The evidence and inferences from the evidence are viewed in the light most favorable to the verdict. *State v. Storey*, 901 S.W.2d 886, 895 (Mo. banc 1995). In reviewing a sufficiency-of-the-evidence claim, this Court determines if sufficient evidence permits a reasonable juror to find guilt. *State v. Grim*, 854 S.W.2d 403, 405–08 (Mo. banc 1993), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). Evidence and any inferences therefrom that do not support a finding of guilt are ignored. *State v. Clemons*, 946 S.W.2d 206, 216 (Mo. banc), *cert. denied*, —— U.S. ——, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997); *State v. O'Brien*, 857 S.W.2d 212, 216 (Mo. banc 1993).

Stephanie Ray actually witnessed and testified to every element of first degree murder. She described in detail how Bucklew entered Sanders's trailer with a pistol in each hand, walked down the hall and shot Sanders. She told the jury that no fight or argument preceded Bucklew shooting Sanders. Ray testified that Bucklew then pistol-whipped her, breaking her jaw, and knocking her to the kitchen floor in a semi-coherent condition. She told how Bucklew handcuffed her and took her from Sanders' trailer as her children cried. She testified that Bucklew found it funny that he had killed Sanders and that he knew he was dead because he had used "hollow point[ ] [bullets] and that it was so far out in the country that they'd rip through him and it would kill him before anybody had a chance to help him." Ray told the jury that Bucklew demanded oral sex from her as they drove. Bucklew took her to a secluded spot and put a gun to her head and raped her while her hands were taped in front of her body. She explained the chase by the highway patrol and told of Bucklew's words and actions during that chase. From Ray's testimony alone, a reasonable jury could find beyond a reasonable doubt that Bucklew knowingly took Michael

Sanders's life after deliberation upon the matter.

The points are denied.

## III.

### Testimony of Stephanie Ray About Phone Call

 Bucklew next claims that the trial court erred in overruling his objection and request for a mistrial because of an alleged prosecutorial discovery violation under Rule 25.03(A)(2). Bucklew claims that the state failed to reveal the substance of a phone conversation between Bucklew and Stephanie Ray. Ray testified that in a telephone conversation on March 7, 1996, Bucklew threatened her life, the lives of her children and the murder victim, Michael Sanders.

 Rule 25.03(A)(2) requires the state, upon motion, to provide the defense with "[a]ny written or recorded statements and the substance of any oral statements made by the defendant." This duty to disclose is not discretionary and is continuing. *State v. Smothers*, 605 S.W.2d 128, 131 (Mo. banc 1980), *cert. denied*, 450 U.S. 1000, 101 S.Ct. 1708, 68 L.Ed.2d 203 (1981).

At trial, the prosecutor asked Ray about a phone call she received from Bucklew while she was at work. Defense counsel objected and both counsel approached the bench. The following colloquy occurred:

AT THE BENCH

Defense: I just wanted to specifically object to the contents of this phone call as evidence of other crimes and irrelevant to the charges that we're trying.

Prosecution: I expect the answer to be that he told her he was going to kill her and her children and cut her children up in front of her.

Court: The objection will be overruled.

OPEN COURT

Q [by prosecution]: Stephanie, would you go ahead and describe for the jury what Russell Bucklew told you in that phone call on March 7, 1996?

A: He said that he knew I'd been cheating on him and that he would, if he ever seen Michael around me again, he said he'd kill him and me and all the kids. So he said he'd kill us all is what he said.

* * *

AT THE BENCH

Defense: I'm sorry. But I believed that statement that she just made included a threat towards Mike. And I believe that's contrary to what the expected testimony was. I mean I don't think she said the phone call, previously claimed that this phone call included a threat towards Mike.

Prosecution: That's something you could impeach her about. That's the first time I've heard it too.

* * *

Defense: And also my objection is it's a statement of the defendant, hasn't been disclosed under Rule 25 because she's claiming that in this phone call at Ceramo [Ray's place of employment] there was a threat against Mike. I believe that's what she just said.

Prosecution: I can only disclose what I have been told and I have, you can impeach it.

* * *

Court: The objection is overruled.

Defense: Ask for a mistrial

Court: That request is denied.

Rule 25.03 does not require the state to disclose what it does not have. *State v. Johnston*, 957 S.W.2d 734, 749 (Mo. banc 1997). The state did not violate the rule.

We next turn to Bucklew's claim of prejudice. He asserts that learning of the telephone conversation at trial deprived him the opportunity to obtain telephone records to show whether the call was made at all. We find no prejudice. Bucklew knew of the telephone conversation all along. He participated in it. It was only the threat to Sanders that he now claims was new information. Obtaining the telephone records would shed no light on the contents of the conversation.

Bucklew also claims he could have crafted an alternative defense had he known of Ray's testimony beforehand. However, he does not indicate the nature of what that defense might have been nor successfully articulate the prejudice that flowed from not presenting it. Indeed, this testimony is less damaging than the testimony of Michael Sanders's son that Bucklew pulled a knife on Sanders at their first meeting and told him to get out of Ray's trailer.

The point is denied.

## IV.

### Incidents Occurring During Chase

■ Bucklew next claims trial court error in admitting evidence of his flight from police and in admitting testimony regarding statements he made during his flight. The statements Bucklew complains of—that he was not going back to prison and would take as many police officers with him as he could in a shootout with police—were related to the jury through the testimony of Stephanie Ray.

Ray's testimony, recounting Bucklew's words during his flight from police, that he did not want to go "back to jail" drew no objection. The statement that Bucklew was going to take as many police officers with him as he could drew no objection and was not included in Bucklew's motion for a new trial. Similarly, Bucklew's claim of erroneous admission of evidence of his flight from police was not properly preserved. We review for plain error only. Rule 30.20. Bucklew's claims do not, on their face, raise substantial grounds for believing that a manifest injustice or a miscarriage of justice occurred. Plain error review is therefore not warranted. *State v. Brown*, 902 S.W.2d at 284.

The points are procedurally waived.

## V.

### Exhibit 57

■ Bucklew alleges trial court error in admitting exhibit 57—a piece of a child's bloodstained artwork seized from the murder scene. The admission of evidence is reviewed for abuse of discretion. *State v. Lyons*, 951 S.W.2d 584, 593 (Mo. banc 1997); *State v. Parkhurst*, 845 S.W.2d 31, 36 (Mo. banc 1992).

Other than observing that the artwork was a child's drawing and was bloody, Bucklew does not specify how he was prejudiced by its admission. Gruesome crimes produce gruesome evidence. The issue is not whether the evidence is gruesome, but whether it is both legally and logically relevant. *See, e.g., State v. Feltrop*, 803 S.W.2d 1, 11 (Mo. banc), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991); *State v. Moore*, 303 S.W.2d 60, 66 (Mo. banc 1957). The artwork was probative of Sanders' location immediately after he was shot and it corroborated Stephanie Ray's testimony about where Sanders fell.

■ Further, a defendant suffers neither prejudice nor reversible error where evidence is improperly admitted if the evidence properly before the court establishes essentially the same facts. *State v. Candela*, 929 S.W.2d 852, 870 (Mo.App.1996); *State v. Jones*, 854 S.W.2d 60, 62 (Mo.App.1993). Bucklew failed to object to the admission of exhibit 37, a close-up photograph of exhibit 57 and the bloodstained carpet in the immediately surrounding area. Exhibit 57 was cumulative.

The point is denied.

## VI.

### Instruction Number 22

■ At trial, Bucklew objected to instruction Number 22[2] because defense counsel

2. Instruction Number 22, which tracks MAI–CR3d 310.06, was submitted as follows:

Evidence has been introduced that the defendant made certain statements relating to the offense for which he is on trial.

If you find that a statement was made by the defendant, and that at that time he understood what he was saying and doing, and that the

statement was freely and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you may give it such weight as you believe it deserves in arriving at your verdict.

However, if you do not find and believe that the defendant made the statement or if you do not find and believe that he understood what

stated that he had "made certain strategic decisions about what [he] would do, [and] present in terms of evidence in trial based upon [the] statement coming in."

The state requested the instruction. MAI–CR3d 310.06, note on use 2, states that the instruction must be given if either the state or the defendant requests it.

Now, on appeal, Bucklew has changed his argument from that which he advanced at trial. He now claims that the instruction should not have been given because it was not supported by the evidence. This argument was not preserved by a specific objection at trial. It is subject only to plain error review. Rule 30.20. Given our earlier conclusion that the trial court did not err in admitting Bucklew's statements, there is no need to review this claim.

## VII.

### Penalty Phase

### A.

Bucklew charges the trial court with error in accepting the jury's sentencing recommendation because the jury failed to indicate that it found the statutory aggravating circumstances beyond a reasonable doubt. He claims this error violates his right to due process guaranteed by the Fourteenth Amendment and his right to be free of cruel and unusual punishment, guaranteed by the Eighth Amendment as applied to the states through the Fourteenth Amendment.

The trial court instructed the jury that it must find aggravating circumstances beyond a reasonable doubt and that:

In determining the punishment to be assessed under Count I [first degree murder] against the defendant for the murder of Michael H. Sanders, you must first unanimously determine whether one or more of the following statutory aggravating circumstances exist:

1. Whether the murder of Michael H. Sanders was committed *while the defendant was engaged in the perpetration of kidnapping . . .*

2. Whether the murder of Michael H. Sanders was committed *while the defendant was engaged in the perpetration of burglary . . . .*

3. Whether the murder of Michael H. Sanders was committed *while the defendant was engaged in the perpetration of rape . . . .*

(Emphasis added). The jury found:

*1.* That Russell Bucklew Committed the Crime of Kidnapping *during the murder of Michael H. Sanders*

*2.* Russell Bucklew Committed the Crime of Burglary *during the murder of Michael H. Sanders*

(Emphasis added.) Bucklew notes that the jury's language differs from that of the instructions and concludes that the jury failed to find the statutory aggravating circumstances that form the necessary predicate to imposition of the death penalty. He asserts that a finding that he committed kidnapping and/or burglary during the murder is qualitatively different from a finding that he committed murder while he was engaged in kidnapping and/or burglary. Neither the trial court nor Bucklew's counsel caught the discrepancies in the language of the jury's findings. Review is for plain error. RULE 30.20.

Bucklew argues that *State v. Lashley*, 667 S.W.2d 712 (Mo. banc 1984), stands for the proposition that a verdict returned by a jury in the punishment phase of a death penalty case that is not in proper form is not a verdict. In *Lashley*, the jury's first verdict form stated " '[t]here was no evidence to disprove he entered the house for the reason of obtaining money.' " *Id.* at 715. This finding came in response to the submission to the jury of the aggravating circumstance that Lashley committed the murder for the purpose of receiving money or any other thing of monetary value. Section 565.032.2(4), RSMo 1994. The trial court refused the verdict because of its improper form and requested the jury to retire to continue its deliberations over defense counsel's objections. Lashley argued that the improper verdict amounted

---

he was saying and doing, or if you do not find and believe that the statement was freely and voluntarily made under all of the circum-

stances surrounding and attending the making of the statement, then you must disregard it and give it no weight in your deliberations.

to an acquittal of the aggravating circumstances submitted. This Court rejected Lashley's argument, holding that the trial court has a duty to refuse to accept a verdict not in proper form and a duty to invite the jury to continue its deliberations when it offers an improper verdict.

Unlike the verdict in this case, the verdict initially offered by the jury in *Lashley* was nonsensical. Here the jury used words in its verdict that did not conform exactly to the instructions, but nevertheless addressed the question whether it believed beyond a reasonable doubt that Bucklew committed the murder and another of the crimes listed in section 565.032.2(11) in the same transaction as the murder.

Our law requires a penalty-phase jury to find aggravating circumstances to erect barriers to arbitrary imposition of the death penalty, *Zant v. Stephens*, 462 U.S. 862, 874, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), and to assure that the ultimate punishment is imposed only in that class of cases in which the crime and the defendant warrant "a more severe sentence...compared to others found guilty of murder. " *Lowenfield v. Phelps*, 484 U.S. 231, 244, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). Bucklew contends that the aggravating circumstance "the murder in the first degree was committed while the defendant was engaged in the perpetration...of...kidnapping [or burglary]", section 565.032.2(11), means that the kidnapping or burglary must have been the primary purpose of the crime and that the murder occurred only as an incident to the kidnapping or burglary.

■ We do not believe that the legislature intended for the section 565.032.2(11) aggravating circumstance to apply only where the jury finds that the murder occurred as an incidental adjunct to a lesser crime. The crimes listed in the statute seldom occur as discrete events neatly separated in time or cause. Instead, these crimes are often intertwined and, in most cases, proceed from a common motive.

The purpose of this aggravating circumstance is not to require the jury to sort out a which-came-first riddle, but to permit the jury to determine if the defendant was participating in a contemporaneous, multiple-crime event. *State v. Brooks*, 960 S.W.2d 479, 496 (Mo. banc 1997). If the jury finds a contemporaneous, multiple-crime event, the minimum threshold for imposition of the death penalty is crossed and the jury may find that this defendant deserves "a more severe sentence...compared to others found guilty of murder [alone]." *Lowenfield*, 484 U.S. at 244, 108 S.Ct. 546.

In finding that Bucklew committed kidnapping and burglary during the murder of Michael Sanders, the jury found the multiple-crime event necessary to support the aggravating circumstance outlined in section 565.032.2(11). *See State v. Reuscher*, 827 S.W.2d 710, 719 (Mo. banc), *cert. denied*, 506 U.S. 837, 113 S.Ct. 114, 121 L.Ed.2d 71 (1992). ("If the intent to impose a penalty of death is clear and the aggravating circumstance upon which the determination was made is sufficiently identified, a death sentence may stand.")

The point is denied.

**B.**

■ Bucklew next assigns error to the trial court's decision to accept the jury's sentencing recommendation. He claims that the jury improperly considered the aggravating circumstance whether he committed the murder while engaged in kidnapping. This conclusion is based on Bucklew's belief that he completed the murder of Michael Sanders prior to beginning the kidnapping of Stephanie Ray. Thus, he could not have committed murder *while* perpetrating the kidnapping.

In the previous point, we held that the aggravating circumstance authorized by section 565.032.2(11) is neither time nor cause specific. The section 565.032.2(11) aggravating circumstance is present if the jury unanimously finds beyond a reasonable doubt that the defendant's actions constituted a contemporaneous, multiple-crime event, irrespective of which crime the defendant most intended when his felonious actions began and irrespective of which crime came first in time. Our previous conclusion renders Bucklew's argument on this point a nullity.

The point is denied.

## C.

Next, Bucklew contends that the trial court plainly erred in permitting the state to argue non-statutory aggravating circumstances the state had not disclosed to him at a reasonable time prior to trial. Specifically, Bucklew claims that the state did not inform him that it would argue: that Bucklew would be dangerous in the future, even if incarcerated; that giving the death penalty to Bucklew would deter others from committing similar murders; and that it would argue matters relating to victim impact.

 Section 565.005.1, RSMo 1994, requires:

At a reasonable time before the commencement of the first stage of any trial of murder in the first degree at which the death penalty is not waived, the state and the defendant, upon request and without order of the court, shall serve counsel of the opposing party with:

(1) A list of all aggravating or mitigating circumstances as provided in subsection 1 of section 565.032, which the party intends to prove at the second stage of the trial.

Section 565.032.2 lists seventeen aggravating circumstances. In addition to these so-called statutory aggravating circumstances, the state may submit aggravating circumstances not listed in the statute. The purpose of relevant, non-statutory, aggravating circumstances is to permit the penalty-phase jury to have before it "any evidence that assists" in the death-penalty-recommendation decision. *State v. Debler*, 856 S.W.2d 641, 656 (Mo. banc 1993). Non-statutory aggravating circumstances include prior criminal convictions as well as crimes for which the defendant is charged but which have not yet reached conviction. *Id.* at 657. Proper victim impact evidence is also a nonstatutory aggravating circumstance. *Payne v. Tennessee*, 501 U.S. 808, 833, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (Scalia, J., concurring).

Bucklew's point here is not that the trial court erred in permitting the state to mention Bucklew's "future dangerousness," the death penalty as a deterrent and victim impact. Bucklew admits that in the presence of proper disclosure, the state may properly offer evidence of all three. *See Simmons v.*

*South Carolina*, 512 U.S. 154, 162–3, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (future dangerousness); *Gregg v. Georgia*, 428 U.S. 153, 183, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (deterrence); and *Payne*, 501 U.S. at 825, 111 S.Ct. 2597 (victim impact). Instead, Bucklew claims that the trial court violated his right to due process by allowing the state to present aggravating circumstance evidence of which Bucklew had no notice.

We must deny Bucklew's argument. The trial in this case began March 31, 1997. The disclosure of aggravating circumstances filed by the state on June 7, 1996, more than nine months prior to trial, listed the statutory aggravating circumstances upon which the state intended to rely and said,

The State incorporates by reference all endorsed witnesses and reports previously or hereafter presented to defense counsel. The testimony of these witnesses concerning the circumstances of these murders [sic], *the affect upon the victims and the anti-social and criminal history of the defendant* will be the evidence offered by the State to prove the aggravating circumstances set out above.

(Emphasis added.) The state also filed a disclosure of non-statutory aggravating circumstances on November 22, 1996. This disclosure listed twenty-one previous convictions and charges of crimes committed by Bucklew. Among these was Bucklew's escape from the Cape Girardeau County jail while he awaited trial on this first-degree murder charge.

 First, the state may argue inferences from evidence. It is reasonable to infer that a person who escaped from jail while awaiting a first-degree murder trial and who has a long criminal record would not suffer confinement well. The allegations of fact contained in the state's disclosures and the language the state used ("anti-social and criminal history") provided Bucklew with sufficient notice of the state's intent to argue future dangerousness.

 Second, deterrence is not an aggravating circumstance, but a policy rationale for imposition of the death penalty. It is a

legally-permissible closing argument in a death penalty case.

■ Third, the state's initial aggravating circumstance disclosure listed victim impact as part of the evidence upon which the state intended to rely. The state endorsed Michael Sanders's mother as a witness. She testified in both the guilt and penalty phases. Her testimony was nearly identical in both instances. She testified that the mother of Michael's two children had abandoned the children and that for at least four years, Michael had taken care of them by himself. Bucklew had ample notice that the state intended to argue victim impact in this case.

The point is denied.

## VIII.

Bucklew's remaining points on appeal raise issues previously and recently decided by this Court against his position. Repeating those holdings would serve no jurisprudential purpose. Rule 30.25.

The points are denied.

## IX.

### Proportionality Review

Under section 565.035.3, RSMo 1994, this Court must determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection 2 of section 565.032 and any other circumstance found;

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both [sic] the crime, the strength of the evidence and the defendant.

### A.

Bucklew does not contend that his sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. After independent review of the record in its entirety, we find no evidence that the imposition of the sentence of death resulted from the influence of passion, prejudice, or any other arbitrary factor.

### B.

As discussed above in section VII A, there is ample evidence to support a finding that the murder in this case was perpetrated during the commission of a burglary and a kidnapping. The jury unanimously found beyond a reasonable doubt that the state proved these aggravating circumstances. The jury's conclusion is readily supported by the record.

### C.

■ In making the determination of whether the sentence in this case is proportionate, this Court considers similar cases where the trial court imposed the death sentence. This Court has upheld the sentence of death when a victim was murdered in front of his children. *See State v. Tokar*, 918 S.W.2d 753 (Mo. banc), *cert. denied*, —— U.S. ——, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996). We have compared Missouri cases in which defendants received the death penalty for committing first degree murder while engaged in the perpetration or attempted perpetration of a burglary in the victim's home. *State v. Ramsey*, 864 S.W.2d 320 (Mo. banc 1993), *cert. denied*, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); *State v. Griffin*, 756 S.W.2d 475 (Mo. banc), *cert. denied*, 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989); *State v. Schneider*, 736 S.W.2d 392 (Mo. banc 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988). And we have upheld cases where the defendant fired multiple shots to achieve his murderous end. *See State v. Nicklasson*, 967 S.W.2d 596 (Mo. banc 1998); *State v. Rousan*, 961 S.W.2d 831 (Mo. banc 1998); *State v. Butler*, 951 S.W.2d 600 (Mo. banc 1997); *State v. Tokar*, 918 S.W.2d at 773; *State v. Nave*, 694 S.W.2d 729 (Mo. banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1986).

In this case, Bucklew murdered Michael Sanders by firing multiple rounds. Bucklew was a violent prior and persistent offender

with an abusive past. The nature of this crime, the history of the defendant and the strength of the evidence support the sentence of death.

The point is denied.

## X.

The judgment is affirmed.

All concur.