**STATE of Missouri, Respondent,**

v.

**Robert L. MITCHELL, Appellant.**

**No. 22671.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 30, 1999.

Motion for Rehearing or Transfer
Denied Sept. 21, 1999.

Application for Transfer Denied
Oct. 26, 1999.

Ellen H. Flottman, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen. Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Robert Mitchell, ("Defendant") appeals from the judgment, entered following a jury trial, convicting him of the Class C felony of involuntary manslaughter, section 565.024, RSMo 1994, for recklessly causing the death of Donald Dean Stipp by shooting him. Defendant was sentenced to a term of imprisonment of six years. Defendant does not challenge the sufficiency of the evidence supporting his conviction. Defendant's single assertion of trial court error is that the trial court erred in overruling his motion to suppress statements that he made to law enforcement officers while in custody. We affirm.

## STANDARD OF REVIEW

"On motions to suppress, the state bears the burden of showing by a preponderance of the evidence that the motion should be denied." *State v. Davis*, 980 S.W.2d 92, 94 (Mo.App.1998). "We view the facts in the light most favorable to the trial court's ruling, disregarding contrary evidence and inferences, to determine if they are supported by substantial evidence." *Id.* "Conflicts in the evidence and the credibility of witnesses are matters for the trial court to resolve." *State v. Banks*, 922 S.W.2d 32, 39 (Mo.App.1996).

"The question of waiver is one of fact, and the trial court's findings of fact concerning waiver will not be overturned unless clearly erroneous." *Id.* Further, "[o]n review 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights." *State v. Bucklew,* 973 S.W.2d 83, 90 (Mo. banc 1998)(quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938)), *cert. denied,* — U.S. ——, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999). "On appeal from denial of a motion to suppress evidence, all evidence bearing on the question presented, both at the motion hearing and at trial, may be considered." *State v. Hunter,* 783 S.W.2d 493, 494 (Mo.App.1990).

## FACTS

As best we can glean from the record, on the morning of May 3, 1997, Defendant left his house to go fishing with friends. He returned home once, about "mid-morning" and then left again to return to the fishing hole. Defendant's wife testified that at that point he was already intoxicated. Defendant returned home again not long before dark. His wife testified that at that point he was "really, really drunk." Defendant returned to the fishing hole once again. Evidently, Defendant's son, and the four friends that he and Defendant were fishing with, arrived at the fishing hole at various times during the day. The group planned on camping that night beside the fishing hole, an activity that apparently was not uncommon for the group. Aside from Defendant's son and J.T. Lewis, a friend of Defendant's son, all of the campers were drinking throughout the evening and were "extremely intoxicated." Mr. Lewis testified that Defendant drank "about twelve beers" and some scotch. For additional entertainment, the campers at times fired two handguns they had brought with them. At some point late in the evening, Defendant and Mr. Stipp were standing at the back of one of two pickup trucks the party had driven to the campsite. Defendant held one of the two handguns, a Browning .22 caliber. A shot rang out. Mr. Stipp fell backwards on the ground and said "you shot me." [1] Defendant told his son: "Take him to the hospital. Just take him to the hospital. He's really been shot." Defendant also stated: "I didn't mean to" and "He was in my face." Defendant's son and two of the other men put Mr. Stipp in one of the pickup trucks and left to seek medical attention. He later died at the hospital of the gunshot wound.

 After the three men departed with Mr. Stipp, Defendant drove to a "Jiffy Mart" in Anderson, a near-by town, and told the clerk to call the sheriff's office. At the Jiffy Mart, Defendant was shaking, and kept repeating to the clerk that he "had just killed his best friend," that he was sorry, and that it was an accident. The clerk called the sheriff and deputy sheriff William Rataczak arrived at the store a short time later. When deputy Rataczak arrived, Defendant came out the door and stated "You don't understand. I just killed my friend." The deputy took Defendant into custody. A number of other officers arrived and Defendant was given his *Miranda* rights at least two times. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant continued to repeat that the officers "didn't understand" and that he had "just killed his buddy." Defendant smelled of intoxicants, his speech was slurred, and at times he'd "go into a mumbling." Defendant was given a portable breathalyzer test that showed his blood alcohol content by weight to be .24%. Defendant was transported to the sheriff's office where he made two taped statements about eleven hours apart. Before each statement, Defendant was read his *Miranda* rights and

---

1. From the trial testimony, we assume the shooting occurred a short time before 1:46 a.m. on May 4, 1997.

signed a form stating that he understood those rights.[2]

Defense counsel filed a "Motion to Suppress Statements" in which he requested that the trial court "suppress evidence of the statements taken from defendant by law enforcement agents...." The trial court overruled Defendant's motion.[3]

## DISCUSSION AND DECISION

In his only point on appeal, Defendant charges that the trial court erred in overruling defense counsel's motion to suppress his statements to police officers because they were involuntarily, unknowingly and unintelligently made due to the fact that he was so intoxicated that he was unable to appreciate the nature and consequences of his statements.

■ "The Fifth Amendment of the United States Constitution provides that no person shall be compelled in any criminal case to be a witness against himself." *Colorado v. Spring*, 479 U.S. 564, 571–72, 107 S.Ct. 851, 856, 93 L.Ed.2d 954, 964 (1987). "The Due Process Clause of the Fourteenth Amendment provides that no State shall 'deprive any person of life, liberty, or property, without due process of law.'" *Colorado v. Connelly*, 479 U.S. 157, 163, 107 S.Ct. 515, 519, 93 L.Ed.2d 473, 481 (1986).[4]

■ "A defendant is denied due process if convicted, in whole or in part, upon an involuntary confession." *State v. Blackman*, 875 S.W.2d 122, 135 (Mo.App.1994). "The test for voluntariness [of a statement] is whether, under the·totality of the circumstances, the defendant was deprived of free choice to admit, to deny or to refuse to answer and whether physical or psychological coercion was of such a degree that the defendant's will was overborne at the time he confessed." *State v. Ervin*, 979 S.W.2d 149, 160 (Mo. banc 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1090, 143 L.Ed.2d 91 (1999); *see Blackman*, 875 S.W.2d at 135. Regardless of a defendant's physical or emotional condition, including his or her level of intoxication, a confession is not involuntary within the meaning of the due process clause of the fourteenth amendment absent coercive police activity. *See Connelly*, 107 S.Ct. at

2. We note that, while the taped statements were both played for the jury and admitted into evidence, neither of the tapes have been presented to this Court as part of the record on appeal. We are, therefore, bereft of any knowledge as to their content. "It is [d]efendant's responsibility to see that a complete record is filed." *State v. Creech*, 983 S.W.2d 169, 171 (Mo.App.1998); *see also* Rule 30.04, Missouri Court Rules (1998). Similarly, the consent forms were not presented as part of the record on appeal though both parties agree that such forms were signed by Defendant and the record shows that they were admitted into evidence. "When an exhibit is omitted from the transcript and is not filed with the appellate court, the intendment and content of the exhibit will be taken as favorable to the trial court's ruling and as unfavorable to Defendant." *Creech*, 983 S.W.2d at 171.

3. "When ruling on a motion to suppress a judge need not make any particular formal finding. The only prerequisite is that the trial court's conclusions make unmistakably clear that the confession is voluntary." *Bucklew*, 973 S.W.2d at 90. The only evidence appearing in the record concerning the trial court's ruling on Defendant's "Motion to Suppress Statements" is a docket entry reading "Docket entry overruling Defendant's Motion to Suppress Evidence and Statements filed by [Defense Counsel]." This entry is followed by the initials "KU." The parties agree in their briefs, however, that the motion was overruled by the trial judge. *See State v. Mouse*, 989 S.W.2d 185, 188 (Mo.App.1999). Further, Defendant does not complain on appeal of the form or adequacy of the trial judge's findings or ruling.

4. The Fifth Amendment privilege is applicable to the States through the Due Process Clause of the Fourteenth Amendment of the Constitution. *Spring*, 107 S.Ct. at 856 n. 5, 93 L.Ed.2d at 964 n. 5 (citing *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)). Sections 10 and 19 of Article 1 of the Missouri Constitution contain Missouri's constitutional guarantees of due process and privilege against self-incrimination, respectively. Mo. Const. art. I, §§ 10, 19 (1945).

522, 93 L.Ed.2d at 482;[5] see also *Ervin*, 979 S.W.2d at 160; *State v. Floyd*, 847 S.W.2d 97, 98 (Mo.App.1992); *State v. Rowe*, 806 S.W.2d 122, 127 (Mo.App.1991). Here, there was no evidence presented of any coercive police activity.

■ This does not dispose of our inquiry, however. See *State v. Bittick*, 806 S.W.2d 652, 658 (Mo. banc 1991).[6] The privilege against self-incrimination "is fully applicable during a period of custodial interrogation." *Spring*, 107 S.Ct. at 856, 93 L.Ed.2d at 964. However, "a suspect may waive his Fifth Amendment privilege, 'provided the waiver is made voluntarily, knowingly and intelligently.'" *Id.*(quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 707 (1966)); see *State v. Knese*, 985 S.W.2d 759, 766 (Mo. banc 1999), *cert. denied*, —— U.S. ——, 119 S.Ct. 1814, 143 L.Ed.2d 1017 (1999). The state bears the burden of proving that the accused properly waived his rights and the state's burden is by a preponderance of the evidence. *Banks*, 922 S.W.2d at 39. "This inquiry has two distinct dimensions." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410, 421 (1986).

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Id.*

■ The requirement that a waiver be knowing and intelligent does not require that a defendant must know and understand all of the possible consequences of the waiver. *State v. Powell*, 798 S.W.2d 709, 713 (Mo. banc 1990). "Rather, it requires that the defendant understood the warnings themselves; 'that he at all times knew that he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction.'" *Id.*(quoting *Moran*, 106 S.Ct. at 1141, 89 L.Ed.2d at 421). "The determination of whether a waiver is knowing and intelligent depends on the facts and circumstances surrounding that case and review is based on the totality of the circumstances, taking into account the background, experience and conduct of the accused." *Bucklew*, 973 S.W.2d at 90. In *Bucklew* the Missouri Supreme Court held that "[i]f one is informed of his right to remain silent under *Miranda*, and understands his right to remain silent under *Miranda*, and thereafter makes voluntary statements, it is absurd to say that such person has not made a knowing and intelligent waiver of his right to remain silent." *Id.* The high court has similarly held that "[a] knowing and intelligent waiver of the right to silence is normally shown by having a police officer testify that he read the accused his rights, asked whether the rights were understood, and received an affirmative response." *State v. Wise*, 879 S.W.2d 494, 505 (Mo. banc 1994). Additionally, "a deficient mental condition, whether manifested by delusional behavior or a positive drug test, does not by itself render a statement unintelligent. A defendant does not have the constitutional right to confess his crime only when totally rational and properly motivated." *Knese*, 985 S.W.2d at 766. Additionally, it has been held that "intoxication at the time of

---

**5.** The Supreme Court of the United States has held that "[t]here is obviously no reason to require more in the way of a voluntariness inquiry in the *Miranda* waiver context than in the Fourteenth Amendment confession context. The sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." *Connelly*, 107 S.Ct. at 523, 93 L.Ed.2d at 486.

**6.** "Absent a finding of whether [a defendant's] confession rested on a knowing and intelligent waiver, [the defendant's] claim that his confession was not constitutional cannot be fully considered." *Id.*

making a statement or confession does not, at least where the intoxication, in the words of some cases, does not amount to mania, require that the statement be excluded because it is involuntary or not made knowingly and intelligently." *State v. Loazia,* 829 S.W.2d 558, 566 (Mo.App. 1992); *see also Rowe,* 806 S.W.2d at 127(intoxication at the time of the confession does not render a confession involuntary unless the intoxication rises to a mania). "Rather, the fact of intoxication goes to the weight and credibility to be accorded the statement." *Loazia,* 829 S.W.2d at 566; *State v. Gullett,* 606 S.W.2d 796, 807 (Mo.App.1980); *see also State v. Heather,* 498 S.W.2d 300, 304 (Mo.App.1973)("Intoxication is a factor to be considered, but is not determinative of the voluntariness of waiver of rights issues.")

■ Here, the testimony at the suppression hearing revealed that Defendant was read his *Miranda* rights at least twice while he was at the Jiffy Mart. Defendant was also read his rights before making each of two taped statements at the Sheriff's office. Before making each taped statement, Defendant signed a form stating that he understood his rights and was waiving them. One Deputy testified that when he read the *Miranda* rights to Defendant at the Jiffy Mart he stopped after each sentence and asked Defendant if he understood and that Defendant responded that he did. Further, when Defendant was read his *Miranda* rights before his first taped interview, Defendant stated, "Those are my Mirandas." From the above, we believe that defendant "understood the warnings themselves." *Powell,* 798 S.W.2d at 713 and we further may conclude that Defendant "at all times knew that he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction." *Id.*

Therefore, viewing the evidence presented on the motion to suppress in the light most favorable to the trial court's ruling, *State v. Smith,* 944 S.W.2d 901, 910 (Mo.

banc 1997), we find that the trial court did not clearly err when it overruled Defendant's motion to suppress the statements he made to law enforcement agents. *Banks,* 922 S.W.2d at 39. Defendant's sole point on appeal is denied.

The trial court's judgment is affirmed.

GARRISON, C.J. and PREWITT, J., concur.